## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| PERPETUA-BURR OAK HOLDINGS OF | ) | |
| ILLINOIS, L.L.C., | ) | Case No. 09-34022 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| IN RE: | ) | Chapter 11 |
| | ) | |
| PERPETUA HOLDINGS OF ILLINOIS, | ) | Case No. 09-34030 |
| | ) | |
| Debtor. | ) | |
| IN RE: | ) | |
| | ) | Chapter 11 |
| PERPETUA, INC., | ) | |
| | ) | Case No. 09-34033 |
| Debtor. | ) | |

## <u>NOTICE OF MOTION</u>

PLEASE TAKE NOTICE that on September 15, 2009 at 2:00 p.m., the undersigned shall appear before the Honorable Pamela S. Hollis, in Courtroom 644, 219 South Dearborn Street, Chicago, Illinois, and then and there present the EMERGENCY MOTION PURSUANT TO SECTIONS 105, 362, 363, AND 364 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORITY TO:  (1) OBTAIN SECURED POST-PETITION FINANCING, (2) GRANT PRIMING LIENS, SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, AND ADEQUATE PROTECTION, (3) MODIFY THE AUTOMATIC STAY, (4) ENTER INTO POST-PETITION AGREEMENTS WITH ITS LENDER, AND (5) SCHEDULE FINAL HEARING**,** at which time you may appear if you deem fit.

Dated: September 14, 2009

Respectfully submitted,

Perpetua, Inc.
Perpetua Holdings of Illinois, Inc.
Perpetua-Burr Oak Holdings of Illinois, L.L.C.

By:      _/s/ Brian L. Shaw_
         One of their attorneys

Robert M. Fishman (#3124316)
Brian L. Shaw (#6216834)
Kimberly Bacher (#6285677)
Shaw Gussis Fishman Glantz
   Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151  telephone
(312) 980-3888  facsimile

## CERTIFICATE OF SERVICE

Brian L. Shaw certifies that he caused to be served a true copy of the above and foregoing EMERGENCY MOTION PURSUANT TO SECTIONS 105, 362, 363, AND 364 OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORITY TO:   (1) OBTAIN SECURED POST-PETITION FINANCING, (2) GRANT PRIMING LIENS, SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, AND ADEQUATE PROTECTION, (3) MODIFY THE AUTOMATIC STAY, (4) ENTER INTO POST-PETITION AGREEMENTS WITH ITS LENDER, AND (5) SCHEDULE FINAL HEARING upon the attached Service List via in the manner so indicated on this 14th day of September, 2009.

/s/ Brian L. Shaw

**First Day Service List**

**Addresses with an electronic mail address were served by electronic mail and U.S. Mail first class postage prepaid.**

**Addresses without an electronic mail address were served for overnight delivery by Federal Express or U.S. Express Mail**

**Main Service List**

Terry Blanchard
c/o Barclay, Dixon & Smith, P.C.
30 S. LaSalle Street, Suite 1625
Chicago, Illinois 60603
tblanchard@barclaydixon.com

Pacesetter SBIC Fund Inc.
MESBIC Ventures, Inc.
Jenner & Block, LLP
Attn: Vincent Lazar
330 N. Wabash Avenue
Chicago, Illinois 60611
vlazar@jenner.com

Kevin W. Doherty
Doherty & Progar LLC
200 West Adams Street, Suite 2220
Chicago, Illinois 60606
kwd@doherty-progar.com

Perpetua, Inc.
3510 E. Hampton Ave.
Villa 100
Mesa, AZ   85204

Perpetua Holdings of Illinois, Inc.
12540 S. Halsted St.
Chicago, IL  60643

William T. Neary
United States Trustee
219 S. Dearborn Street, Suite 873
Chicago, Illinois 60604
USTPRegion11.ES.ECF@usdoj.gov

Ryan P. Stewart
Blank Rome LLP
One Logan Squire
130 North 18th Street
Philadelphia, PA 19103-6998
Stewart-R@BlankRome.com

James Geoly
Susan M. Horner
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Avenue, 22nd Floor
Chicago, Illinois 60611-3607
jgeoly@burkelaw.com
shorner@burkelaw.com

Perpetua-Burr Oak Holdings of Illinois , L.L.C.
4400 W. 127th St .
Alsip, IL   60803

John J. Piegore
Sanchez Daniels & Hoffman LLP
333 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
jpiegore@sanchezdh.com

{6341 MOT A0201235.DOC}

CNH Capital America LLC
100 Brubaker Avenue
New Holland, PA  17557

1st Source Bank
P.O. Box 783
South Bend, IN  46624

**Litigation Service List**

Larry R. Rogers
Brian LaCien
POWER ROGERS & SMITH, P.C.
70 West Madison, 55th Floor
Chicago, IL 60602
lrogers@prslaw.com
blacien@prslaw.com

Blake W. Horwitz
Horwitz, Richardson & Baker, LLC
20 S. Clark Street, Ste. 500
Chicago, IL  60603
bwhorwitz@tdrlawfirm.com

Daniel M. Kotin
CORBOY & DEMETRIO
33 North Dearborn St, 21st Floor
Chicago, IL 60602
DMK@CorboyDemetrio.com

Kristine M Tuttle
820 E Noleman
Centralia, IL 62801
ktuttle@illinoisfirm.com

Louis C. Cairo
Colin J. O'Malley
GOLDBERG, WEISMAN & CAIRO
One E. Wacker, Suite 3800
Chicago, IL  60601
comalley@gwclaw.com

Greg T. Grzeskiewicz, AAG
Office of the Attorney Genteral
Consumer Fraud Bureau
100 W. Randolph, 12th Floor
Chicago, IL  60601
ggreskiewicz@atg.state.il.us

Alfred S. Vano
SANTILLI & VANO
111 W. Washington Street
Suite 1240
Chicago, IL 6062

Arthur Loevy
Mike Kanovitz (mike@loevy.com)
Jon Loevy (jon@loevy.com)
Daniel Twetten
Loevy & Loevy
312 N. May St. Suite 100
Chicago, IL 60607

Tom Leahy
Michael Alkaraki
LEAHY & HOSTE
321 Clark Street, Suite 2222
Chicago, IL 60610
tleahy@leahylaw.com
malkaraki@leahylaw.com

Bruce E. Brandwein
Brandwein & Smolin
20 S. Clark St., Suite 410
Chicago, IL  60603
brucebrandwein@yahoo.com

Deidre Baumann
Paul R. Shuldiner
Baumann & Shuldiner
20 S. Clark Street, Suite 500
Chicago, IL 60603
baumannesq@worldnet.att.net

Daniel Klein
Lisa Weinstein
KURASCH & KLEIN, Ltd.
100 N. LaSalle St., Ste. 2005
Chicago, Illinois 60602
dklein@chicagopilaw.com
lisalu13@aol.com

Laura Gordon
Susan E Loggans & Associates
33 North LaSalle Street Suite 1710
Chicago,  IL 60602

Jonathan E. Walner
Harvey L. Walner & Assoc., Ltd.
Attorneys at Law
33 N. LaSalle St. Suite 2700
Chicago, IL 60602
jon.walner@walnerlaw.com

James Montgomery Jr.
J. Andrew Brabender
James D. Montgomery and Associates, Ltd.
1 N. LaSalle St., Suite 2450
Chicago,  IL 60602
james2@jdmlaw.com

Jeffrey M. Friedman
120 South State Street, Suite 400
Chicago, IL 60603
freidman@jmflaw.com

Robert Kreisman
Kreisman Law Offices
55 W. Monroe St., Ste. 3720
Chicago, IL  60603
bob@robertkreisman.com

George G. Argionis
Argionis & Associates LLC
180 N. LaSalle
Chicago, IL  60601
gga@argionislaw.com

Arthur S. Gold
Gold & Coulson
A partnership of Professional
   and Limited Liability Corporations
11 S. LaSalle Street, #2402
Chicago, IL  60603
asg@gcjustice.com

Aron D. Robinson Law Office
19 S. LaSalle St, #1300
Chicago, IL 60603
aroblaw@aol.com

Jessica Bryant
3420 S. Cottage Grove, #900
Chicago, IL  60616

Christopher Smith
Robert Johnson
Smith, Johnson & Antholt LLC
112 S. Sangamon St., 3rd Floor
Chicago, IL  60607

Kevin A. Ameriks
Paul M. Orenic
105 W. Madison 23rd Floor
Chicago, IL 60602
Paul.orenic@fnf.com

Derrick D. Kee
Power & Dixon
123 W. Madison Street
19th Floor
Chicago, IL 60602

Robert P. Walsh, Jr.
Clifford Law Offices
120 N. LaSalle Street, 31st Floor
Chicago, IL 60602
rpw@cliffordlaw.com

Charles E. Tannen
Karlin & Fleisher, LLC
111 West Washington, Suite 1505
Chicago, IL 60602
cet@karlinfleisher.com

Kenneth M. Battle
Gardiner Koch Weisberg & Wrona
53 W. Jackson, Suite 950
Chicago, IL 60604
kbattle@gkw-law.com

Phyllis Y. Price
Attorney At Law
Law Office of Phyllis Price
30 N. Michigan Ave.
Suite 1310
Chicago, IL  60602

Michael Gill
Pfaff & Gill, Ltd.
Trial Lawyers
1 E. Wacker Drive, Suite 3310
Chicago, Illinois 60601
mgill@pfaffgill.com

Carl S. Salvato
Navigato & Salvato
53 W. Jackson Blvd., #1750
Chicago, IL 60604
css@nslawoffice.com

Cynthia Kisser
Lawrence H. Hyman & Assoc.
111 W. Washington Street, Suite 1025
Chicago, IL 60602
ckisser@lhyman.com

Donna M. Lach
Meribeth Mermall
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, IL  60602

Paul Castiglione
Asst. State's Atty.
500 Richard J. Daley Center
Chicago, Illinois 60602

Tiffany N. Hardy
Edelman Combs Latturner & Goodwin, LLC
120 S. LaSalle Street, 18th Floor
Chicago, IL 60603
edcombs@aol.com

Willie Gary
CK Hoffler
Marwan Porter
Gary, Williams, Finney, Lewis, Watson &
Sperando, P.L.
221 E. Osceola St
Stuart, FL  34994

Gerald J. Bekkerman
Whiting Law Group, Ltd.
1 E Wacker Dr, Suite 2300
Chicago, IL 60601
gbekkerman@wlglaw.net

Paul M. Weiss (paul@freedweiss.com)
George K. Lang (george@freedweiss.com)
Jeffrey A. Leon
Julie D. Miller
FREED & WEISS LLC
111 W. Washington, # 1331
Chicago, IL  60602

Richard S. Zachary
Richard S. Zachary P.C.
180 N. LaSalle, Ste. 1925
Chicago, IL  60601
rsz@zacharylaw.net

Shelby H. Kanarish
Harvey L. Walner & Associates, Ltd.
33 N. LaSalle, Ste. 2700
Chicago, IL 60602
shelby@walnerlaw.com

Mamie Alexander
McCain Webb Alexander PC
2600 S Michigan, #210
Chicago, IL  60616
malexander@mwalawgroup.com

Cannon Lambert, Sr.
Karchmar & Lambert, P.C.
211 W. Wacker Dr., Suite 550
Chicago, IL 60606
karchmarlambert@aol.com

Elliot Pollock
111 W. Washington, Suite 1301
Chicago, IL 60602
pollocklaw@sbcglobal.net

Marvin W. Gray
405 E. Oakwood Blvd., Suite 2L
Chicago, IL 60653-2303
MarvinGray@aol.com

Sean Murray
Anesi Ozmon Rodin Novak & Kohen Ltd.
161 N. Clark St, Suite 2100
Chicago, IL 60601
Seanmurray3@aol.com

Gary D. McCallister
Jamie G. Goldstein
Gary D. McCallister & Associates
120 North LaSalle Street Suite 2800
Chicago,  IL 60602
gdm@gdmlawfirm.com
jgoldstein@gdmlawfirm.com

Thomas O. Plouff
COSTELLO, McMAHON BURKE & MURPHY, LTD.
150 North Wacker Dr., Suite 3050
Chicago, IL 60606-1610
tom@alabama-attorney.net

Gregory L. Leiter
Leiter Law Offices
63 W Jefferson St
Suite 202
Joliet, IL  60432

Joseph P. Harris
77 West Washington Street, Ste. 1020
Chicago, IL 60602

Matthew T. Malinowski
Law Offices of Robert Orman
1 N. LaSalle St., Suite 1775
Chicago, IL  60602
plaintifflaw4@gmail.com

Mark V. Ferrante
Law offices of Mark V. Ferrante
161 North Clark Street, Suite 2575
Chicago, IL 60601
MVF@FerranteLaw.com

Yao O. Dinizulu
Dinizulu Law Group, Ltd.
221 North LaSalle Street, Suite 1100
Chicago, IL 60601
Smith, Johnson & Antholt LLC
dinizulu@dinizululawgroup.com

Steven J. Plotkin
2324 Park Place
Evanston, IL 60201
sjplaw@sbcglobal.net

Diane Moshman, A.A.G.
100 West Randolph, 12th Fl.
Chicago, IL  60601
dmoshman@atg.state.il.us

Lynne Plum Duffey
Mabel Bannister
Hofeld & Schaffner
30 North LaSalle Street
Chicago, IL 60602
lduffey@hofeldandschaffner.com

Paul A. Greenberg
Briskman & Briskman
40 West Hubbard St., #200
Chicago, IL  60654

Zachary K. Sims
2400 Ravine Way, #200
Glenview, IL  60025
zacharysims@aol.com

Barclay, Dixon & Smith, P.C.
30 S. LaSalle St., Ste. 900
Chicago, IL  60603

Brian J. McManus
30 N. LaSalle St., #2126
Chicago, IL  60602
bmcmanus@mcmanuslawfirm.com

Clint Krislov
Ken Goldstein
Krislov & Associates, Ltd.
20 N. Wacker, Suite 1350
Chicago, IL 60606
clint@krislovlaw.com
ken@krislovlaw.com

**Unsecured Creditors Service List**

Adwards by Calvin
930 E. 192 Place
Glenwood, IL 60425

Aetna Health of Illinois
100 N Riverside Plz, #20
Chicago, IL 60606-1597

Allen Limousine
211 W. Touhy
Des Plaines, IL 60014

Arrow Uniform Rental 4853-01
Dept 039101
Taylor, MI 48180

Joseph Battan
6032 S. Loomis
Chicago, IL 60636

D.O.H. Services, Inc.
2152 Vermont Street
Blue Island, IL 60406-2546

Dykstra Funeral Home
29 E. Ninth Street
Holland, MI 49423

Flowers 1st by Erkstine
511 E. 75th
Chicago, IL 60619

Lantech Computer Systems
5154 W 127 Street
Alsip, IL 60803

Matthews International-00058
Kingwood Facility
PO Box 547
Kingwood, WV 26537-0547

New Edge Networks/10868
PO Box 4800
Portland, OR 97208

Northern Trust Company
50 S LaSalle St
Chicago, IL 60603

Osco Incorporated
PO Box 70
Lemont, IL 60439

Regions Bank
118 N. Clinton St.
Chicago, IL 60661

Speaks Funeral & Cremation Services
39 Street, 291 Hwy
Indendence, MO 64055

Telecheck
PO Box 17310
Denver, CO 80217-0310

Xerox Corp./710000522
PO Box 802555
Chicago, IL 60680-2555

AIG
PO Box 382014
Pittsburgh, PA 15250

{6341 MOT A0201235.DOC}

American Express
PO Box 0001
Los Angeles, CA 90096

CT Corporation
PO Box 4349
Carol Stream, IL 60197

Qwest
PO Box 29039
Phoenix, AZ 85038

AT&T/773-233-5676-261-9
PO Box 8100
Aurora, IL 60507-8100

Allied Waste Services
PO Box 9001154
Louisville, KY 40290-1154

Arlington Power Equipment
20175 N. Rand
Palatine, IL 60074

Chicago Tire
16001 S. Van Drunen Rd.
South Holland, IL 60473

Com Ed - Burr Oak/0437222001
Bill Payment Center
Chicago, IL 60668-0001

Illinois Department of Revenue
PO Box 19447
Springfield, IL 62794-9447

Local 1 Health Maintenance Fund
PO Box 577517
Chicago, IL 60657

Matthews International-07052
Kingwood Facility
PO Box 547

Kingwood, WV 26537-0547

Menards
PO Box 5219
Carol Stream, IL 60197-5219

Linda Reese
8212 S. Ridgeland
Chicago, IL 60617

SEIU COPE Program
PO Box 94407
Chicago, IL 60690

Sheila Shell
7327 S Chappel
Chicago, IL 60649

Sprint-838452512
PO Box 4181
Carol Stream, IL 60197-4181

Town & Country Landscape
PO Box 2150-W
Bedford Park, IL 60499

US Trust
135 S LaSalle
Chicago, IL 60603

Van Gard Vault
5100 Industrial Hwy
Gary, IN 46406

Warren Oil Co.
PO Box 40
Summit, IL 60501

Lorraine Wells-McKee
15642 S Park Ave
South Holland, IL 60473

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| PERPETUA-BURR OAK HOLDINGS OF | ) | |
| ILLINOIS, L.L.C., | ) | Case No. 09-34022 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| IN RE: | ) | Chapter 11 |
| | ) | |
| PERPETUA HOLDINGS OF ILLINOIS, | ) | Case No. 09-34030 |
| | ) | |
| Debtor. | ) | |
| IN RE: | ) | |
| | ) | Chapter 11 |
| PERPETUA, INC., | ) | |
| | ) | Case No. 09-34033 |
| Debtor. | ) | |

**EMERGENCY MOTION PURSUANT TO SECTIONS 105, 362, 363, AND 364 OF THE
BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE FOR AUTHORITY TO: (1) OBTAIN SECURED POST-
PETITION FINANCING, (2) GRANT PRIMING LIENS, SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, AND ADEQUATE PROTECTION, (3)
MODIFY THE AUTOMATIC STAY, (4) ENTER INTO POST-PETITION
AGREEMENTS WITH ITS LENDER, AND (5) SCHEDULE FINAL HEARING**

Perpetua, Inc. ("Perpetua"), Perpetua Holdings of Illinois, Inc. d/b/a Cedar Park

Cemetery ("Cedar Park") and Perpetua-Burr Oak Holdings of Illinois, L.L.C. d/b/a Burr Oak

Cemetery ("Burr Oak", collectively, with Cedar Park and Perpetua, the "Debtors" or "Perpetua

Entities"), for its *Emergency Motion Pursuant to Sections 105, 362, 363, and 364 of the*

*Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure for Authority to:*

*(1) Obtain Secured Post-Petition Financing, (2) Grant Priming Liens, Superpriority*

*Administrative Expense Status, and Adequate Protection, (3) Modify the Automatic Stay, (4)*

*Enter Into Post-Petition Agreements with its Lender, and (5) Schedule Final Hearing* (the

"Financing Motion"), respectfully state as follows:

## I.  <u>RULE 4001 SUMMARY STATEMENT</u>[1]

1.      This Financing Motion seeks authority to obtain DIP Financing from Pacesetter

SBIC Fund, Inc. ("<u>Lender</u>") on a superpriority administrative and first-priority priming lien

basis, subject to the Carveout exceptions set forth below, in accordance with the Term Sheet

attached hereto as Exhibit A up to the aggregate principal amount of $250,000 pursuant to

sections 364(c) of the Bankruptcy Code.

2.      The Lender's commitment to provide the DIP Financing is conditioned upon the

entry of a final order within 25 days after the date of the entry of the Interim Order, substantially

in the form of the Interim Order, authorizing continued borrowing by the Debtor on terms and

conditions set forth in the Term Sheet and granting adequate protection and other related relief

(the "Final Order").

3.      The material terms of the DIP Financing are as follows:

- <u>Loan Amount</u>.  The DIP Financing will be up to the aggregate principal amount of $250,000,

  $175,000 of which is subject to the Interim Order.  *See* Term Sheet, §§ 3 and 6, Interim

  Order, ¶ 3.

- <u>Borrowing Conditions</u>.   The DIP Financing shall be subject to the Term Sheet, the DIP Loan

  Agreement, the Interim Order and any Final Order, and the proceeds thereof shall be used

  pursuant to the terms of the Budget, as the Budget may be amended or supplemented from

  time to time with the Lender's advance written consent<u>; provided, however</u>, that the total

---

1.      [1] Capitalized terms used in this Summary Statement section shall have the same
meanings given to them later in this Motion or the DIP, as applicable, and in the event of any
inconsistency, the terms in the DIP Loan Agreement shall control.

amount of the DIP Financing may not be increased except by further order of this Court. *See* Term Sheet, generally, Interim Order, ¶¶ 3 and 18.

- Interest.  All DIP Indebtedness shall bear interest at the rate of ten percent (10 %) per annum, except upon the occurrence and continuation of an Event of Default, in which event interest shall accrue at a rate of eighteen percent (18 %) per annum.  *See* Term Sheet, § 7, Interim Order, ¶ 4.

- Maturity.  Except as the Lender in its sole discretion agrees otherwise in writing, (a) the Lender's willingness to make loans pursuant to the authorization granted by the Interim and Final Order shall cease, (b) all DIP Indebtedness shall be immediately due and payable in cash, and (c) the Lender shall have the enforcement rights set forth in Paragraphs 13 and 14 of the Interim Order, upon the earlier (the "Maturity Date") of (a) December 15, 2009 (if the DIP Financing has not been further extended by order of  the Bankruptcy Court); (b) the date of acceleration of the DIP Indebtedness upon the occurrence of an Event of Default; or (c) such later date as agreed to in writing by the Lender and the Debtors (or its successor in interest).  *See* Term Sheet, § 12, Interim Order, ¶ 5.

- Security and Adequate Protection.  The Lender will be granted, as security for the repayment of all amounts of the DIP Indebtedness and subject only to the Carveout, (a) superpriority claim status pursuant to section 364(c)(1) of the Bankruptcy Code senior to any other superpriority claims and (b) will be secured by, pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, a valid and perfected first priority lien in and on all of the DIP Collateral.  In addition, subject to the Carveout, the Lender's claim for repayment of the DIP Indebtedness shall constitute a Superpriority Claim.  *See* Term Sheet, §§10 and 11, Interim Order, ¶¶ 11 and 15.

- <u>Adequate Protection of Reinstated Prepetition Debt</u>.  To secure the payment of any portion of the Prepetition Indebtedness that may be reinstated (the "<u>Reinstated Prepetition Debt</u>") the Secured Creditors will be granted replacement liens (the "<u>Replacement Liens</u>") as security for any Reinstated Prepetition Debt.  *See*  Interim Order, ¶¶ 9 and 10.

- <u>Events of Default</u>.  Each of the following constitute an "Event of Default" under the Loan Agreement (*see* Term Sheet, § 9, Interim Order, ¶¶ 7 and 8):

  o the entry of an order or ruling (which has not been withdrawn, dismissed, or reversed) (1) granting additional financing under Section 364(c) or (d) of the Bankruptcy Code; (2) except as provided in the DIP Loan Agreement or under this Order, granting any lien superior to Lender's interests upon or affecting the Secured Creditors' Prepetition or Lender' DIP Collateral (as defined below); or (3) except as provided in the DIP Loan Agreement and the Interim or Final Order, authorizing the use of cash collateral of the Secured Creditors under Section 363(c) of the Bankruptcy Code without the prior written consent of Secured Creditors;

  o the entry of an order amending, supplementing, staying, vacating, or otherwise modifying the Interim or Final Order without the written consent of the Lender and the Debtors;

  o the payment by the Debtors of, or application by the Debtors for authority to pay any prepetition claim without Lender's prior written consent;

  o the appointment of an interim or permanent trustee in these Cases or the appointment of an examiner in these Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtors;

o   the entry of an order or ruling disposing or depriving any of the Debtors of their right to operate their businesses and hold their property;

o   the dismissal of any of the Cases or the conversion of any of the Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code or the filing by the Debtors of a motion or other pleading seeking the dismissal of any of the Cases under Section 1112 of the Bankruptcy Code or otherwise;

o   the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien against the Secured Creditors' Prepetition Collateral or the Lender's DIP Collateral;

o   the failure of the Debtors to perform any of its obligations under the Interim or Final Order which materially adversely affects the interests of the Secured Creditors in their Prepetition Collateral or in Lender in the DIP Collateral;

o   except as otherwise provided by the Interim or Final Order, the entry of an order in these Cases granting any other superpriority administrative expense or lien equal or superior to that granted to Lender;

o   the termination of the exclusive period for the Debtors to file a plan of reorganization in any of these Cases;

o   the failure of the Debtors to obtain Bankruptcy Court approval of the sale of all or substantially all of the Debtors' assets (the "Asset Sale") within seventy-five (75) days of the Petition Date;

o   the failure of the Debtors to close the Asset Sale within ninety (90) days of the Petition Date;

o   except as provided in any of the other default sections, failure by the Debtors to

promptly perform any other obligation or observe any other condition, covenant,

term, agreement, or provision required to be performed or observed by the

Debtors under this Order within the earlier of (i) five (5) Business Days after

notice thereof from Lender or the Secured Creditor to the Debtors, or (ii) ten (10)

days after the Debtors first become aware thereof;

o   the Debtors' expenses in any calendar month exceeding the Variance respecting

the Budget, without the Lender's prior written consent or the use by the Debtors

of the proceeds of the DIP Financing for any purpose other than as set forth in the

Budget;

o   a declaration or determination by any court of competent jurisdiction that any

portion of the Indebtedness or the Prepetition Liens, or the liens granted to the

Lender pursuant to the Interim or Final Order, are null, void, or subordinate; or

o   any inaccuracy or untruth in any representation, or warranty in any material

respect contained in the DIP Loan Agreement or any of the Prepetition Loan

Documents, or of any statement or certification as to facts delivered to Lender

pursuant to any DIP Loan Document.

## II.  <u>JURISDICTION AND BACKGROUND</u>

**A.    The Chapter 11 Filing**

4.   On September 14, 2009 (the "Petition Date"), the Debtors each filed a voluntary

petition in this Court under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-

1532, as amended (the "Bankruptcy Code"), thereby commencing the above-captioned cases (the

"Cases").  Except as noted below, the Debtors continue to manage and operate their businesses

as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

{6341 MOT A0201235.DOC}                    6

5.   The United States Trustee has not yet appointed a creditors' committee in the Cases. No trustee or examiner has been appointed.

6.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**B.**    **Background**

7.   Perpetua was organized under the laws of the state of Florida in 1998.  Perpetua (a) owns all of the capital stock of (i) Cedar Park and (ii) Perpetua Holdings, Inc. d/b/a Wade Funeral Home ("Wade") (a non-debtor affiliate) and (b) holds all of the common interests in Burr Oak.   Perpetua provides administrative, managerial and other support services to Cedar Park, Burr Oak and Wade.   Perpetua's subsidiaries' cemeteries and funeral homes principally serve minority communities in the Chicago and St. Louis metropolitan areas.

8.   Cedar Park was organized under the laws of Illinois in 2004, at which time it acquired the Cedar Park Cemetery.  Cedar Park owns and operates an active cemetery located at 12540 S. Halsted, Calumet Park, Illinois (the "Cedar Park Cemetery").  Cedar Park maintains an office on site.

9.   Burr Oak was organized under the laws of Illinois in 2001, at which time it acquired the Burr Oak Cemetery.  Burr Oak owns and operates an active cemetery located at 4400 W. 127th Street, Alsip, Illinois (the "Burr Oak Cemetery").  Burr Oak maintains an office on site.

10. As of the Petition Date, pursuant to a July 16, 2009 order of the Circuit Court of Cook County, entered in Case No. 09 CH 22800, Roman Szalbeski has been appointed and is serving as a receiver ("Receiver") over the assets and operations of the Burr Oak Cemetery.

11. Pacesetter SBIC Fund, Inc. ("PSF") and MESBIC Ventures, Inc. ("MESBIC," along with PSF, the "Secured Creditors") are lenders to and hold certain equity-type investments in the

Debtors.  The Secured Creditors are funds that focus on advancing economic development and job creation in mostly low and moderate income areas by providing long-term growth capital to small businesses owned and led by African American and Hispanic American entrepreneurs. The Secured Creditors make loans and/or equity-linked investments in businesses such as the Debtors, but do not engage in the day-to-day operations of the businesses to which they provide capital.

12. In June 2009, Burr Oak management discovered exposed human bones at the Burr Oak Cemetery, and reported its discovery to authorities.  The Sheriff of Cook County ("Sheriff") began an investigation in response to the report of Burr Oak's management, which resulted in the arrest of four Burr Oak employees, a site manager and three grave diggers, for their alleged improper disposal of human remains and other improprieties.  One of these individuals had been fired by the Debtors' for other reasons in March 2009.  The remaining three individuals were promptly fired by Burr Oak after the June 2009 discovery.  The Sheriff's investigation has not implicated any of the officers or principals of the Debtors or Wade.

13. Following the arrests of the four former employees, numerous lawsuits involving the Burr Oak Cemetery were commenced by various parties.  The lawsuits named various of Burr Oak, Cedar Park, Perpetua and some non-existent entities as defendants.  As of the Petition Date, the Debtors believe that at least fifty-five such lawsuits have been filed in either the Circuit Court of Cook County or the United States District Court for the Northern District of Illinois (collectively, the "Lawsuits").

14. Three of the Lawsuits, including those filed by the Sheriff and Dan Hynes, the Illinois Comptroller, led to the appointment of the Receiver.  As of the Petition Date, the Receiver had operational control over Burr Oak's assets and the Burr Oak Cemetery.  The Receiver, however,

has limited ability to operate or rehabilitate the Burr Oak Cemetery, as he has access to little or

no funds other than those funds made available pursuant to an order of the Circuit Court of Cook

County authorizing the Receiver to use up to $50,000 from the principal of Burr Oak's statutorily

maintained perpetual care trust fund (the "Care Funds").

15. The Receiver and Burr Oak have limited access to cash as the result of (a) the

cessation of burials at the Burr Oak Cemetery and (b) a July 15, 2009 Garnishment served on

Bank of America by a party purporting to have a judgment against an unknown entity named

Chicago Burr Oak Cemetery, L.L.C. that caused a freeze to be placed on Burr Oak's operating

accounts.  As a result, and despite the fact that the Comptroller lifted restrictions it previously

placed on the Burr Oak and Cedar Park operating accounts, the Receiver is in possession of

nominal funds.  On the other hand, Cedar Park is in possession of its own operating accounts.

All such funds in the Debtors' operating accounts serve as collateral for loans made by the

Secured Creditors.

16. As of the Petition Date, the Receiver does not have the resources necessary to procure

maintenance work at Burr Oak Cemetery, let alone the rehabilitation work that must also be

undertaken.  In addition, the Debtors do not have the resources to actively defend the Lawsuits,

or prevent the plaintiffs therein from racing each other to judgment and ultimately dismantling

the assets of Burr Oak, as well as possibly affecting the assets of Perpetua and Cedar Park.  As

such, the Debtors determined that the only way to preserve and maximize the value of their

assets and to allow all of their creditors to be treated fair and equitably was to file for protection

under chapter 11 of the Bankruptcy Code.

**C.    Prepetition Secured Debt**

17. At various times, from 1997 to the Petition Date, the Secured Creditors or their

predecessors loaned money to the Debtors (the "Prepetition Loans").  The Prepetition Loans

were memorialized in promissory notes and debentures in favor of the Secured Creditors or their

predecessors (the "Prepetition Notes"), including, but not limited to, (i) a December 20, 1999

note issued by cedar park in favor of Mesbic Ventures, inc. ("MVI") in the original principal

amount of $2,500,000; (ii) an August 2, 2004 note issued by cedar park in favor of MVI in the

original principal amount of $300,000; (iii) each debenture (as defined in the investment

agreement dated December 19, 1997 among Perpetua, Banc of America SBIC corporation and

others (the "Investment Agreement")) issued pursuant to the terms of the investment agreement,

including, without limitation, that certain Perpetua subordinated debenture dated December 19,

1997, in the principal amount of $500,000, that certain Perpetua subordinated debenture dated

January 28, 1999, in the principal amount of $350,000, and that certain Perpetua subordinated

debenture dated March 5, 1999, in the principal amount of $100,000, (iv) that certain promissory

note dated December 20, 1999, issued by Perpetua, in favor of Banc of America SBIC

Corporation, in the original principal amount of $400,000, (v) that certain promissory note dated

February 4, 2000, executed by Perpetua, in favor of Banc of America SBIC Corporation, in the

original principal amount of $100,000, (vi) that certain promissory note dated as of July 28,

2004, executed by Perpetua, in favor of Power Equities, Inc, in the original principal amount of

$175,000.  The Prepetition Loans are secured by mortgages on and security interests in

substantially all of the property of Burr Oak and Cedar Park (the "Prepetition Collateral")

pursuant to (a) the mortgage, assignment, security agreement and financing statement dated July

3, 2001 entered into by burr oak, as modified by that certain assignment and modification

agreement entered into by Burr Oak, effective as of December 31, 2007, (b) the mortgage,

assignment, security agreement and financing statement dated December 20, 1999 entered into

by Cedar Park, as modified by that certain mortgage modification agreement entered into by

Cedar Park, dated as of July 28, 2004, and that certain assignment and modification agreement

entered into by Cedar Park, effective as of December 31, 2007, and (c) the junior mortgage,

assignment, security agreement and financing statement entered into by Cedar Park, dated as of

April 21, 2000, as modified by that certain junior mortgage modification agreement entered into

by Cedar Park, dated as of July 28, 2004 (collectively, the "Prepetition Liens").  The Prepetition

notes are presently held by the Secured Creditors.

18. The Debtors defaulted under the terms of the Prepetition Notes by, among other

things, failing to pay amounts owed under the Prepetition Notes.

19. Subject to the "Reservation of Rights" set forth and defined in Paragraph 26 of the

Interim Order, (1) the Secured Creditors' Prepetition Liens in the Prepetition Collateral have

been duly perfected and are in all respects valid, enforceable and not subject to avoidance; and

(2) the Secured Creditors' Prepetition Liens are validly perfected, first-priority security interests,

subject to the terms of the Prepetition Loans, Prepetition Notes and Prepetition Liens, and the

other documents and instruments evidencing and securing the Prepetition Loans (collectively, the

"Prepetition Loan Documents").

20. Subject to the Reservation of Rights set forth and defined in Paragraph 27 of the

Interim Order, as of the Petition Date, the aggregate outstanding aggregate amount of principal

and interest due under the Prepetition Loans of at least approximately $6,450,303.91 exclusive of

fees and expenses (the "Prepetition Debt").

### III. DIP FINANCING

21. The Debtors need funds to maintain continued operations at the Burr Oak and Cedar

Park Cemeteries, including the payment of employees and professionals and the satisfaction of

other working capital and operational needs—all of which are aimed at preserving, maintaining,

and/or increasing the value of the Debtors' assets.

22. The Debtors are unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code merely as an administrative expense pursuant to Section 364(b) of the Bankruptcy Code.  The Debtors are unable to obtain credit on terms equal to or more favorable than those proposed by the Lender.

23. The Lender has agreed to make loans to the Debtors in accordance with the terms of the DIP Loan Agreement and has negotiated at arms' length and in good faith within the meaning of Section 364(e) of the Bankruptcy Code.  Those terms include the following, which supplement the Rule 4001 Statement set forth at paragraphs 1 through 3 herein:

- Security and Adequate Protection.  By the entry of the Interim and Final Order, the Lender will be granted, as security for the repayment of all amounts of the DIP Indebtedness and subject only to the Carveout, (a) superpriority claim status pursuant to section 364(c)(1) of the Bankruptcy Code senior to any other superpriority claims and (b) will be secured by, pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, a valid and perfected first priority lien in and on all real and personal property of the Debtors, including without limitation (i) all existing and after-acquired accounts, chattel paper, deposit accounts, instruments, investment property, documents, inventory, equipment, general intangibles (including intellectual property), insurance claims, tort claims, and real estate interests, together with insurance proceeds of any of the foregoing; (ii) any claims or causes of action belonging to the Debtors or the estates under Chapter 5 of the Bankruptcy Code; and (iii) any recoveries under section 506(c) of the Bankruptcy Code to the extent any proceeds of the DIP Financing are used to pay expenses benefitting any other party (collectively with all proceeds and products of any or all of the foregoing, the "DIP Collateral").  Either Secured Creditors or Lender at their respective option may release at any time from their liens and

security interests any assets determined by the either to have a risk of liabilities which either

of them in their sole discretion deem unacceptable.  With respect to the DIP Indebtedness, no

liens or security interests granted to the Lender, and no claim of the Lender, shall be subject

to subordination to any other liens, security interests, or claims under Section 510 of the

Bankruptcy Code or otherwise.

- <u>Superprority Claim</u>.  Subject to the Carveout, the Lender's claim for repayment of the DIP

  Indebtedness shall constitute an allowed administrative-expense claim under

  Section 364(c)(1) of the Bankruptcy Code (the "<u>Superpriority Claim</u>") and shall have priority

  over all other administrative expenses and costs of administration of any kind, including

  those specified in, or ordered pursuant to, Section 105, 326, 330, 331, 503(b), 507(a), 507(b),

  or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the

  Case or any Successor Case), and shall at all times be senior to the rights of the Debtors, any

  trustee, and/or any estate representative in any of the Cases, if such Case or Cases are

  converted to one under chapter 7 of the Bankruptcy Code (a "<u>Successor Case</u>").

- <u>Budget, Use of Funds.</u>  The DIP Financing shall be subject to the Term Sheet, the DIP Loan

  Agreement, the Interim Order and any Final Order, and the proceeds thereof shall be used

  pursuant to the terms of the Budget, as the Budget may be amended or supplemented from

  time to time with the Lender's advance written consent<u>; provided, however</u>, that the total

  amount of the DIP Financing may not be increased except by further order of this Court; and

  further provided that the Debtors shall be (a) deemed to be in compliance with the Budget so

  long as its total cash disbursements, on a monthly basis, are less than 110% of the total

  amount provided for in the Budget for each month (collectively, the "<u>Variance</u>") and (b)

  permitted to pay expenses in the ordinary course of business in accordance with the Budget

and the Variance unless and until this Court enters a subsequent order to the contrary.  The

extension of DIP Financing shall not be construed as a commitment to continue to provide

DIP Financing after the occurrence of an Event of Default or beyond the Maturity Date.

- <u>Adequate Protection for Reinstated Debt</u>. To secure the payment of any portion of the

Prepetition Indebtedness that may be reinstated (the "<u>Reinstated Prepetition Debt</u>") the

Secured Creditors are hereby granted replacement liens (the "<u>Replacement Liens</u>") as

security for any Reinstated Prepetition Debt.  In connection with a sale, lease or other

disposition of all or substantially all of the Postpetition Collateral (the "<u>Sold Collateral</u>")

approved by the Court in accordance with Sections 363 or 1129 of the Bankruptcy Code with

the written consent of the Secured Creditors and Lender, the Secured Creditors and Lender

shall be obligated to consent to such disposition free and clear of the Replacement Liens and

to otherwise release and terminate such Replacement Liens so long as (i) the Secured

Creditors and Lender have received indefeasible payment in full of the Indebtedness, (ii)

Secured Creditors and Lender consent to such sale and (iii) the Secured Creditors retain the

Replacement Liens (on Postpetition Collateral other than the Sold Collateral) in each case in

accordance with the terms hereof; <u>provided</u> that the Secured Creditors' Replacement Liens

on the DIP Collateral that is not Sold Collateral and shall be deemed waived or terminated on

the Deadline if no potential cause of action has been filed by a committee or any other party

in interest.  Notwithstanding anything to the contrary herein, any Reinstated Prepetition Debt

shall be reinstated with the same validity, priority and extent of such Reinstated Prepetition

Debt as of the Petition Date or with that validity, priority, and extent established by any

finding or judgment by final order.

- <u>Stay Modification</u>.  The automatic stay pursuant to Section 362 of the Bankruptcy Code (the

  "<u>Stay</u>") is modified as to the Secured Creditor and Lender to permit them to perform in

  accordance with, and exercise, and enforce its rights, benefits, privileges, and remedies

  pursuant to the Interim and Final Order and the other DIP Loan Documents without further

  application or motion to, or order from, the Court (except as provided below) and regardless

  of any change in circumstances (whether or not foreseeable), neither Section 105 of the

  Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be

  utilized to prohibit the Secured Creditors' or Lender's exercise and enforcement of any of

  such rights, benefits, privileges and remedies.  The Lender is hereby granted leave, among

  other things, (a) to receive and apply collections on and proceeds of the DIP Collateral (the

  "<u>Payments</u>") to the DIP Indebtedness in the manner specified in the Interim and Final Order

  and the DIP Loan Documents, (b) to file or record any financing statements, mortgages, or

  other instruments or other documents to evidence the security interests in and liens upon the

  DIP Collateral, (c) to the extent permitted by Section 506(b) of the Bankruptcy Code, to

  charge and apply payments to any interest, fees, costs, and expenses and other amounts

  accruing at any time under the DIP Loan Documents or the Interim and Final Order as

  provided in the DIP Loan Documents or the Interim and Final Order, (d) to give the Debtors

  any notice provided for in any of the DIP Loan Documents or the Interim and Final Order,

  and (e) upon the occurrence of an Event of Default or upon the Maturity Date, and without

  application or motion to, or order from the Court (i) to terminate the Postpetition Financing

  under the Interim and Final Order and the other DIP Loan Documents, (ii) to declare all DIP

  Indebtedness immediately due and payable and to require that all contingent DIP

  Indebtedness (if any) be cash-collateralized or terminated without liability to the Lender, and

(iii) to cease making loans or other extensions of credit and/or suspend or terminate any

obligation of the Lender to make loans or other extensions of credit under the DIP Loan

Documents or the Interim or Final Order.

- <u>Foreclosure/Enforcement of Lien</u>.  Upon the occurrence of any Event of Default or upon the

  Maturity Date, the Secured Creditors or Lender shall be entitled to file a motion on three (3)

  business days' notice seeking modification of the Stay to allow for the Secured Creditors' or

  Lender's exercise of all of its available remedies on notice to the Debtors, any official

  committee, other parties entitled to notice pursuant to Federal Rule of Bankruptcy Procedure

  2002 and the United States Trustee (the "<u>Stay Relief Motion</u>") and the Court will conduct an

  expedited hearing as promptly as possible regarding the Stay Relief Motion.  The Debtors

  shall cooperate with the Secured Creditors and Lender in connection with any permitted

  enforcement action by the Lender by, among other things, (a) providing access to the DIP

  Collateral to representatives of the Lender, (b) providing the Secured Creditors and Lender

  access to their books and records, (c) performing all other obligations set forth in the

  Prepetition Loan Documents, the Interim Order and/or the other DIP Loan Documents, and

  (d) taking reasonable steps to safeguard and protect the DIP Collateral until the Lender can

  make adequate provision to protect and safeguard the DIP Collateral.  The Debtors shall not

  otherwise interfere or encourage others to interfere with the Secured Creditors' or Lender's

  enforcement of its rights.

- <u>Credit</u>.  The Debtor may not incur any other indebtedness under sections 364(c) or (d) of the

  Bankruptcy Code.

- <u>Releases and Validation of Prepetition Indebtedness and Liens; Allowance of Secured Claim</u>.

  The releases, discharges, waivers, and agreements set forth in this paragraph will be deemed

effective upon the entry of the Interim Order, subject only to the Reservation of Rights (as

defined in Paragraph 27 of the Interim and Final Order) in favor of any official committee

and other parties in interest (other than the Debtors) upon the express terms and conditions

set forth in Paragraph 27 of the Interim and Final Order and the Final Hearing on the

Financing Motion.  The Debtors and their estates shall be deemed to have (a) released and

waived any and all defenses (including, without limitation, offsets and counterclaims of any

nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability

(under Sections 510, 544, 545, 547, 548, 550, 551, 552, or 553 of the Bankruptcy Code or

otherwise) of the Prepetition Indebtedness and the Prepetition Liens created by the

Prepetition Loan Documents in favor of the Secured Creditor; and (b) agreed, without further

Court order and without the need for the filing of any proof of claim, to the allowance

pursuant to Sections 502 and 506 of the Bankruptcy Code of the prepetition claims of the

Secured Creditors on account of the Prepetition Indebtedness as secured claims according to

the Secured Creditors' books and records, the principal aggregate amount of which is not less

than approximately $6,450,303.91 as of the Petition Date, plus accrued postpetition interest,

fees, expenses, and other amounts chargeable under the Prepetition Loan Documents and the

Interim and Final Order.

- <u>Indemnities</u>.  The Debtors must indemnify and hold the Lender harmless from and against

    any and all suits, actions, proceedings, claims, damages, losses, liabilities, and expenses

    (including, without limitation, reasonable attorneys' fees and disbursements, including those

    incurred upon any appeal) which may be instituted or asserted against or incurred by the

    Lender as the result of its having entered into the DIP or having extended credit thereunder,

excluding any such suits, actions, proceedings, claims, damages, losses, liabilities, or expenses arising from the gross negligence or willful misconduct of the Lender.

- <u>Objections by Parties in Interest; Reservation of Rights</u>.  All of the provisions of the Interim Order shall be binding on the Debtors and, subject to Reservation of Rights set forth in this paragraph and the Final Hearing, on all creditors and other parties in interest.  Except as to the DIP Indebtedness, the Postpetition Liens and the Superpriority Claim granted as adequate protection to the Lender, there shall be reserved for any committee and any other party in interest (other than the Debtors) any and all rights, actions, claims, and defenses they may have in this Case, including but not limited to the right to challenge the validity and priority of, and to seek to subordinate, the prepetition liens, mortgages, and security interests of the Secured Creditors or any other party asserting such rights (the "<u>Reservation of Rights</u>"); <u>provided</u>, <u>however</u>, that the committee (if any) and any other party in interest (other than the Debtors) shall have only up to and including sixty (60) days from the entry of the Interim Order (the "<u>Deadline</u>") within which to exercise such rights by filing and serving upon the Debtors and the Secured Creditors and their respective counsel, a complaint or other proper pleading (the "<u>Complaint(s)</u>") with respect to (a) the claims, causes of actions, and defenses released by the Debtors pursuant to Paragraph 25 of the Interim Order or (b) the validity, extent, priority, avoidability, or enforceability, as the case may be, of the Prepetition Indebtedness or the Secured Creditors' Prepetition Liens in and to the Prepetition Collateral. In the event that no Complaint is filed and served on or before the Deadline and in the manner provided in this paragraph, the provisions of Paragraph 25 and Paragraph 27 of the Interim Order shall become final and binding on all such parties, including a Chapter 11 or Chapter 7 trustee appointed in the Cases or Successor Cases.  The right of creditors and

parties in interest to seek the appointment of a Chapter 11 trustee or an examiner is

preserved.

- <u>No Surcharge</u>.  At no time during these Cases shall the surcharge provisions of Section

    506(c) of the Bankruptcy Code, the enhancement of collateral provisions under Section 552

    of the Bankruptcy Code, or any other legal or equitable doctrine (including unjust

    enrichment) be imposed upon the Secured Creditor or Lender and any of the Prepetition

    Collateral or DIP Collateral by or for the benefit of any party in interest, including, without

    limitation, the Debtors, any of the Estate Professionals (defined below), or any trustee.

- <u>Carveout</u>. Subject to the remaining provisions of this paragraph, the Secured Creditors' or

    Lender's liens on and security interests in the Prepetition Collateral, DIP Collateral and its

    Superpriority Claim shall be subject to only (a) the payment of any unpaid fees payable

    pursuant to 28 U.S.C. § 1930 and (b) the aggregate allowed unpaid fees and expenses

    payable to professional persons retained by the Debtors under Section 327 of the Bankruptcy

    Code (collectively, the "<u>Estate Professionals</u>") whether such fees and expenses were incurred

    and/or allowed prior to or subsequent to an occurrence of an Event of Default, <u>provided</u>,

    <u>however</u>, that the aggregate amount of the unpaid Estate Professionals fees and expenses

    incurred after the occurrence of an Event of Default to which the Secured Creditors' or

    Lender's respective security interests in the Prepetition Collateral, DIP Collateral and

    Superpriority Claim are subject may not exceed $100,000 (the amounts specified in clauses

    (a) and (b) of this paragraph, including the limitations therein, collectively, are the

    "<u>Carveout</u>").  The Carveout shall not be used in connection with (i) preventing, hindering or

    delaying the Secured Creditors' or Lender's enforcement or realization upon the Prepetition

    Collateral and DIP Collateral after an Event of Default has occurred; (ii) using or seeking to

use cash collateral or selling or otherwise disposing of the Prepetition Collateral without the

consent of the Secured Creditors and Lender; (iii) using or seeking to use any insurance

proceeds without the consent of the Secured Creditors and Lender; (iv) incurring additional

postpetition indebtedness without the consent of the Secured Creditors and Lender; and (v)

litigating, objecting to or contesting in any manner or raising any defenses to the validity,

extent, amount, perfection, priority or enforceability of the Prepetition Loan Documents, the

DIP Loan Documents and the Indebtedness, or asserting any claims or causes of action,

including, without limitation, any actions under Chapter 5 of the Bankruptcy Code against

the Secured Creditors or Lender, their affiliates, or their respective officers, directors,

employees, members, partners, principals, managers, agents, attorneys, investment bankers,

professionals and advisors.

- <u>Order Binding on Successors and Assigns</u>.  The provisions of the Interim and Final Order

  shall be binding upon and inure to the benefit of the Secured Creditors, Lender, the Debtors,

  and their respective successors and assigns, including any trustee or other estate

  representative appointed as a representative of the Debtors' estates or of any successor

  estates.

- <u>Effect of Dismissal, Conversion, or Substantive Consolidation</u>.  If any or all of the Cases are

  dismissed, converted, otherwise superseded, or substantively consolidated, the Secured

  Creditors' and Lender's rights and remedies under the Interim and Final Order and the DIP

  Loan Documents shall be and remain in full force and effect as if the Cases had not been

  dismissed, converted, superseded, or substantively consolidated.  Furthermore,

  notwithstanding any such dismissal, conversion, supercission, or substantive consolidation,

  all of the terms and conditions of the Interim and Final Order, including, without limitation,

the liens and the priorities granted under the Interim and Final Order, shall remain in full

force and effect.

24. Good cause exists for approval of the Financing Motion and the Debtors' financing

agreement with the Lender under the terms set forth in the DIP Loan Agreement.  The entry of

the Interim and Final Orders will minimize disruption of the Debtors as "going concerns" and is

in the best interest of the Debtors, their creditors, and their estates.

25. In accordance with Local Rule 4001-2, extraordinary circumstances exist to grant the

highlighted provisions of the Interim and Final Orders as the Lender has represented it would not

extend the subject DIP financing without such provisions.

26. The Debtor believes that the terms of the DIP Financing, taken as a whole, are more

favorable to the Debtor than those available from alternative sources.  Moreover, the Debtor is

not aware of any alternative sources given the Debtor's current financial condition, capital

structure and limited revenue generating capabilities.  Indeed, the DIP Financing is only

available because of the Lenders existing affiliation with the Debtors.

27.  The terms of the DIP Financing, as more particularly set forth in the proposed

Interim Order and Term Sheet, have been negotiated in good faith and at arm's length between

the Debtor, the Lender and other parties to the Term Sheet, and are fair and reasonable under the

circumstances.

28. Accordingly, the Debtor requests, pursuant to Fed. R. Bankr. P. 4001(c)(2) and Local

Rule 4001-2, that the Court immediately enter the Interim Order attached hereto and

incorporated herein by reference for all purposes, subject to its entry on a final basis in

accordance with Fed. R. Bankr. P. 4001(c).  The Debtor respectfully submits that the Court's

entry of the Interim Order on an interim basis is in the best interests of the Debtor, its creditors

and its estate, and is necessary for the efficient and effective preservation and ultimate

liquidation of the Debtor's business and to prevent immediate and irreparable harm, pending a

final hearing on this motion under Fed. R. Bankr. P. 4001(c)(2).

## IV.   LOCAL BANKRUPTCY RULE 4001-2 DISCLOSURES[2]

29. The following disclosures of certain terms contained in the Interim Order are made

pursuant to (A)(2) of Local Bankruptcy Rule 4001-2 ("Rule 4001-2"):

**Cross Collateralization Other Than As Adequate Protection:** Yes.  The DIP Financing is
secured by all of the Debtors' assets.

**Findings Regarding Validity, Perfection Or Amount Of Secured Creditor's Lien Or Debt
And Waiver Of Claims Against Secured Creditor:** Yes, see paragraphs 25 and 27 of the
Interim Order.

**Waiver Of Rights Under Section 506(c)***:* Yes, see paragraph 16 of the Interim Order.

**Liens On Chapter 5 Causes Of Action:** Yes, see paragraph 11 of the Interim Order.

**Roll-Up Of Prepetition Debt:** No.

**Unequal Treatment Of Professionals And Limit On Committee's Use Of Carve-Out:** The
treatment of professionals is not discriminatory.  There is a Carveout that provides for payment
of the Debtor's professional fees that is set forth in paragraph 17 of the Interim Order.  There are
certain restrictions placed on the use of Carveout funds that are set forth therein.

**Priming Of Secured Liens Without Consent:** No valid liens against the Debtors' assets will
be non-consensually primed.

**Declaration Against Imposition Of Lender Liability:** No, but the Debtor must indemnify the
Lender as set forth in paragraph 31(b) of the Interim Order.

**Relief From The Automatic Stay On An Expedited Basis And/Or Without Further Order
Of The Court:** Yes, see paragraphs 13 and 14 of the Interim Order.

**The Maximum Borrowing On An Interim And Final Basis:** $250,000; $175,000.

**The Budget:** Is attached hereto as Exhibit B.

---

[2] Although these disclosures are made with respect to the Financing Order as proposed
on an interim basis, the Debtors believe that many of the provisions discussed herein will also be
contained in any Final Order on the Financing Motion.

30. Absent the Court's approval of the relief sought herein, the Debtor faces a substantial and probable risk that its assets will be damaged irreparably. The Debtor believes that the protections to be provided to the Lender in exchange for the financing contemplated hereby, as set forth in the proposed Interim Order, are fair and reasonable under the current circumstances.

## V.  INTERIM RELIEF

31. Fed. R. Bankr. P. 4001(c) permits a court to conduct a hearing and approve a debtor's request for authority to obtain credit prior to the 15-day period following the service of such a motion "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(c). The Debtor submits that, for the reasons set forth herein, authority to obtain the post petition financing upon the terms and conditions set forth in the Interim Order on an interim basis, as requested in this motion, is necessary to avoid immediate and irreparable harm to the Debtor's estate.

## VI.  NOTICE AND REQUEST FOR PRELIMINARY AND FINAL HEARING

32. The Debtor requests that the Court schedule a hearing (the "Preliminary Hearing") on an expedited and emergency basis to consider the approval of the proposed DIP Financing pending a final hearing (the "Final Hearing") to consider the final approval of the DIP Financing and the entry of the Final Order.

33. The Debtor has provided notice of this motion and Preliminary Hearing by federal express overnight delivery or hand delivery to (a) the Office of the United States Trustee, (b) counsel for the Lender, (c) each of the Debtor's unsecured creditors; (d) the Illinois Department of Revenue, (e) its stockholders and (f) the Internal Revenue Service.

## VII. LEAVE TO FILE MOTION IN EXCESS OF 15 PAGES

34.  The Financing Motion has been prepared in compliance with Federal Rule of Bankruptcy Procedure 4001 and Local Rule 4001. For that reason, as well as the complexity of

the matters set forth herein and in the accompanying proposed Order, the Motion is in excess of 15 pages.  Accordingly, the Debtors ask that the Court grant it leave to file the Financing Motion in excess of 15 pages, retroactive to September 14, 2009.

## VIII.   CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order: (a) authorizing the Debtor to obtain the DIP Financing pursuant to the terms and conditions described in this motion and as more particularly described in the Interim Order, with the Interim Order being effective immediately upon its entry; (b) scheduling, pursuant to Bankruptcy Rule 4001, a Final Hearing on the motion; (c) granting the Debtors leave to file the Financing Motion in excess of 15 pages retroactive until September 14, 2009 and (d) granting the Debtor such other and further relief as is just and proper.

Respectfully submitted,

Perpetua, Inc.
Perpetua Holdings of Illinois, Inc.
Perpetua-Burr Oak Holdings of Illinois, L.L.C.

Dated:  September 14, 2009           By:    _/s/ Brian L. Shaw_____
                                            One of their attorneys

Robert M. Fishman (#3124316)
Brian L. Shaw (#6216834)
Kimberly Bacher (#6285677)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151  telephone
(312) 980-3888  facsimile

{6341 MOT A0201235.DOC}                    24