## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| PERPETUA-BURR OAK HOLDINGS OF | ) | |
| ILLINOIS, L.L.C., *et al.* | ) | Case No. 09-34022 |
| | ) | Jointly Administered |
| Debtors. | ) | |

### FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN SECURED POST-PETITION FINANCING, (2) GRANTING PRIMING LIENS, SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, AND ADEQUATE PROTECTION, (3) MODIFYING THE AUTOMATIC STAY, AND (4) AUTHORIZING DEBTOR TO ENTER INTO POST-PETITION AGREEMENTS WITH ITS LENDER

Upon consideration of the *Emergency Motion Pursuant to Sections 105, 362, 363, and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure for Authority to: (1) Obtain Secured Post-Petition Financing, (2) Grant Priming Liens, Superpriority Administrative Expense Status, and Adequate Protection, (3) Modify the Automatic Stay, (4) Enter Into Post-Petition Agreements with its Lender, and (5) Schedule Final Hearing* (the "Financing Motion"), filed by the Perpetua Entities[1], the Debtors and Debtors in Possession in these Cases (collectively the "Debtors"),[2] seeking authorization, pursuant to Sections 105, 301, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of the Bankruptcy Code, Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure, and Local Rule 4001 of the United States Bankruptcy Court for the Northern District of Illinois to obtain secured postpetition financing from Pacesetter SBIC Fund, Inc. (the "Lender"), on a superpriority

---

[1] The Perpetua Entities are: Perpetua Holdings of Illinois, Inc., Perpetua-Burr Oak Holdings of Illinois, LLC and Perpetua, Inc.

[2] All capitalized terms used in this Final Order but not otherwise defined shall be given the meaning ascribed to such terms in the Term Sheet (the "Term Sheet") and the Motion.

{7185 ORD A0242957.DOC}7185 ORD A0237402.DOC}
27464.6

administrative expense claim and first-priority priming lien basis[3] (the "DIP Financing").

Based on the unrebutted assertions made in the Financing Motion, the argument of counsel made on the record at the interim hearing ("Interim Hearing") and Final Hearing (as defined below) on the Financing Motion, the documentary and testimonial evidence presented and proffered at the Interim and Final Hearing, and the record, the Debtors and the Lender represent and stipulate as follows:

A.      This Court has core jurisdiction over the Financing Motion pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.  Venue of this proceeding and the Financing Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

B.      On September 14, 2009 ("Petition Date"), the Debtors filed for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-entitled chapter 11 cases (the "Cases").  The Debtors are in possession of and are managing their assets as debtors in possession within the meaning of Section 1101(1) of the Bankruptcy Code.  As debtors in possession in Chapter 11, the Debtors have substantially all of the rights, powers, and duties of a trustee under Section 1107(a) of the Bankruptcy Code.

C.      Debtor Perpetua-Burr Oak Holdings of Illinois, LLC d/b/a Burr Oak Cemetery ("Burr Oak") owns and operates the Burr Oak Cemetery in Alsip, Illinois.  Debtor Perpetua Holdings of Illinois, Inc. d/b/a/ Cedar Park Cemetery ("Cedar Park") owns and operates the Cedar Park Cemetery located in Calumet Park, Illinois.  Debtor Perpetua, Inc. ("Perpetua") owns all of the common stock of Cedar Park and all of the common interests of Burr Oak.  Perpetua also provides certain management and administrative services to Cedar Park and Burr Oak.

D.      At various times, from 1997 to the Petition Date, Pacesetter SBIC Fund, Inc.

---

[3] Subject to the exceptions noted in paragraph 11 hereof.

("PSF") and MESBIC Ventures, Inc. ("MVI," collectively with PSF, the "Secured Creditors") or

their predecessors loaned money to the Debtors (the "Prepetition Loans"). The Prepetition Loans

were memorialized in promissory notes and debentures in favor of the Secured Creditors or their

predecessors (the "Prepetition Notes"), including, but not limited to, (i) a December 20, 1999

note issued by Cedar Park in favor of Mesbic Ventures, Inc. ("MVI") in the original principal

amount of $2,500,000; (ii) an August 2, 2004 note issued by Cedar Park in favor of MVI in the

original principal amount of $300,000; (iii) each Debenture (as defined in the Investment

Agreement dated December 19, 1997 among Perpetua, Banc of America SBIC Corporation and

others (the "Investment Agreement")) issued pursuant to the terms of the Investment Agreement,

including, without limitation, that certain Perpetua Subordinated Debenture dated December 19,

1997, in the principal amount of $500,000, that certain Perpetua Subordinated Debenture dated

January 28, 1999, in the principal amount of $350,000, and that certain Perpetua Subordinated

Debenture dated March 5, 1999, in the principal amount of $100,000, and (iv) that certain

Promissory Note dated December 20, 1999, issued by Perpetua, in favor of Banc of America

SBIC Corporation, in the original principal amount of $400,000, (v) that certain Promissory Note

dated February 4, 2000, executed by Perpetua, in favor of Banc of America SBIC Corporation, in

the original principal amount of $100,000, (vi) that certain Promissory Note dated as of July 28,

2004, executed by Perpetua, in favor of Power Equities, Inc, in the original principal amount of

$175,000. The Prepetition Loans are secured by mortgages on and security interests in

substantially all of the property of Burr Oak and Cedar Park (the "Prepetition Collateral")

pursuant to (a) the Mortgage, Assignment, Security Agreement and Financing Statement dated

July 3, 2001 entered into by Burr Oak, as modified by that certain Assignment and Modification

Agreement entered into by Burr Oak, effective as of December 31, 2007, (b) the Mortgage,

Assignment, Security Agreement and Financing Statement dated December 20, 1999 entered

into by Cedar Park, as modified by that certain Mortgage Modification Agreement entered into

by Cedar Park, dated as of July 28, 2004, and that certain Assignment and Modification

Agreement entered into by Cedar Park, effective as of December 31, 2007, and (c) the Junior

Mortgage, Assignment, Security Agreement and Financing Statement entered into by Cedar

Park, dated as of April 21, 2000, as modified by that certain Junior Mortgage Modification

Agreement entered into by Cedar Park, dated as of July 28, 2004 (collectively, the "Prepetition

Liens").  The Prepetition Notes are presently held by Pacesetter SBIC Fund, Inc, and MVI.

     E.      The Debtors defaulted under the terms of the Prepetition Notes by, among other

things, failing to pay amounts owed under the Prepetition Notes.

     F.      Subject to the "Reservation of Rights" set forth and defined in Paragraph 27 of

this Final Order, (1) the Secured Creditors' Prepetition Liens in the Prepetition Collateral have

been duly perfected and are in all respects valid, enforceable and not subject to avoidance; and

(2) the Secured Creditors' Prepetition Liens are validly perfected, first-priority security interests,

subject to the terms of the Prepetition Loans, Prepetition Notes and Prepetition Liens, and the

other documents and instruments evidencing and securing the Prepetition Loans (collectively, the

"Prepetition Loan Documents").

     G.      Subject to the Reservation of Rights set forth and defined in Paragraph 27 of this

Final Order, as of the Petition Date, the aggregate outstanding aggregate amount of principal and

interest due under the Prepetition Loans of at least approximately $6,345,887.13 exclusive of

fees and expenses (the "Prepetition Debt").

     H.      On September 14, 2009, the Debtors filed the Financing Motion seeking

authorization to obtain the DIP Financing as set forth in the term sheet ("Term Sheet") between

and among the Debtors and the Lender (the "DIP Loan Agreement").  (A true and correct copy
of the Term Sheet is attached hereto as Exhibit A).  The Debtors need funds to maintain
continued operations at the Burr Oak and Cedar Park Cemeteries, including the payment of
employees and professionals and the satisfaction of other working capital and operational
needs—all of which are aimed at preserving, maintaining, and/or increasing the value of the
Debtors' assets.

      I.      The Debtors are unable to obtain adequate unsecured credit allowable under
Section 503(b)(1) of the Bankruptcy Code merely as an administrative expense pursuant to
Section 364(b) of the Bankruptcy Code.  The Debtors are unable to obtain credit on terms equal
to or more favorable than those proposed by the Lender.

      J.      The Lender has agreed to make loans to the Debtors in accordance with the terms
of the DIP Loan Agreement and has negotiated at arms' length and in good faith within the
meaning of Section 364(e) of the Bankruptcy Code.

      K.      Good cause exists for approval of the Financing Motion and the Debtors'
financing agreement with the Lender under the terms set forth in the DIP Loan Agreement.  The
entry of this Final Order will minimize disruption of the Debtors as "going concerns" and is in
the best interest of the Debtors, their creditors, and their estates.

      L.      In accordance with Local Rule 4001-2, extraordinary circumstances exist to grant
the provisions of this Final Order as highlighted pursuant to Federal Rule of Bankruptcy
Procedure 4001 and Local Rule 4001 at paragraphs 1 through 3 and 29 of the Financing Motion,
as the Lender has represented it would not extend the subject DIP Financing without such
provisions.

      M.      All other parties allegedly having liens or other interest in the Debtors' assets,

including the Prepetition Collateral given notice of the Final Hearing, the relief sought in the

Financing Motion and the associated October 6, 2009 Objection Deadline for the Final Hearing,

as evidenced by certificates of service. The Court finds that notice was due, sufficient,

appropriate, and adequate under Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy

Procedure, Section 364 of the Bankruptcy Code, and the circumstances of these Cases.

N.      There having been no objections to the entry of the Final Order as requested in the

Financing Motion, except as raised by the United States' Trustee, which issue is addressed in

paragraph 27, below.

BASED UPON the above findings, and for the reasons stated in open court that shall

constitute the decision of the Court, it is

ORDERED:

1.      Financing Motion Granted. The Financing Motion is granted, subject to the terms

and conditions set forth in this Final Order.

2.      Authorization. The Debtors are expressly authorized and empowered (a) to

borrow money from the Lender in accordance with the attached budget (the "Budget" attached

hereto as Exhibit B) and pursuant to the terms of the DIP Loan Agreement, on a senior secured

and superpriority administrative expense basis as set forth in this Final Order; (b) to perform

their obligations pursuant to the provisions of this Final Order, and (c) to enter into the DIP Loan

Agreement and other agreements, instruments, and documents as necessary (collectively, the

"DIP Loan Documents") as are consistent with this Final Order and as may be necessary or

required to evidence their obligations to the Lender, to consummate the terms and provisions of

the Financing Motion and this Final Order, and to evidence perfection of the mortgages, liens

and security interests to be given to the Lender pursuant to this Final Order and the DIP Loan

Documents.  (All postpetition loans and all other indebtedness and obligations incurred on or

after the Petition Date by the Debtors to the Lender pursuant to this Final Order and any

subsequent orders and the DIP Loan Documents, including principal, accrued and unpaid

interest, costs, fees, and expenses, are referred to in this Final Order as the "DIP Indebtedness,"

and, together with the principal, accrued and unpaid interest, costs, and expenses related to the

Prepetition Loan (the "Prepetition Indebtedness") as the "Indebtedness.")  Notwithstanding the

authorization granted under this Final Order for the Lender to lend and the Debtors to borrow

such sums as are set forth in the Budget, this Final Order shall not constitute independent

authority for the Debtors to spend such sums on items that may require separate authorization

from the Bankruptcy Court.

     3.     Borrowing.  Subject to the terms and conditions of this Final Order, the DIP Loan

Documents, and the Budget, the Lender may make postpetition loans to the Debtors, in an

aggregate amount not to exceed $475,000, unless such amount is increased by agreement of the

Lender and Debtors and order of the Court.

     4.     Interest.  All DIP Indebtedness shall bear interest at the rate of ten percent (10 %)

per annum, except upon the occurrence and continuation of an Event of Default, in which event

interest shall accrue at a rate of eighteen percent (18 %) per annum.

     5.     Termination of Postpetition Credit.  Except as the Lender in its sole discretion

agrees otherwise in writing, (a) the Lender's willingness to make loans pursuant to the

authorization granted by this Final Order shall cease, (b) all DIP Indebtedness shall be

immediately due and payable in cash, and (c) the Lender shall have the enforcement rights set

forth in Paragraphs 13 and 14 of this Final Order, upon the earlier (the "Maturity Date") of (a)

December 15, 2009 (if the DIP Financing has not been further extended by order of the

Bankruptcy Court); (b) the date of acceleration of the DIP Indebtedness upon the occurrence of an Event of Default; or (c) such later date as agreed to in writing by the Lender and the Debtors (or its successor in interest).

6.      <u>Nonpayment Event of Default</u>.  An "<u>Event of Default</u>" (remedies as to which may only be exercised pursuant to Paragraph 13 and 14 of this Final Order) shall occur upon the Debtors' failure to pay when due and payable, or when declared due and payable, all or any portion of the DIP Indebtedness.

7.      <u>Other Events of Default</u>.  The occurrence of any of the following shall also constitute an Event of Default (remedies as to which may be exercised only pursuant to Paragraph 13 and 14 of this Final Order) with respect to the DIP Financing:

(a)     the entry of an order or ruling (which has not been withdrawn, dismissed, or reversed) (1) granting additional financing under Section 364(c) or (d) of the Bankruptcy Code; (2) except as provided in the DIP Loan Agreement or under this Order, granting any lien superior to Lender's interests upon or affecting the Secured Creditors' Prepetition or Lender' DIP Collateral (as defined below); or (3) except as provided in the DIP Loan Agreement and this Order, authorizing the use of cash collateral of the Secured Creditors under Section 363(c) of the Bankruptcy Code without the prior written consent of Secured Creditors;

(b)     the entry of an order amending, supplementing, staying, vacating, or otherwise modifying this Final Order without the written consent of the Lender and the Debtors;

(c)     the payment by the Debtors of, or application by the Debtors for authority to pay any prepetition claim without Lender's prior written consent;

(d)     the appointment of an interim or permanent trustee in these Cases or the appointment of an examiner in these Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtors;

(e)     the entry of an order or ruling disposing or depriving any of the Debtors of their right to operate their businesses and hold their property;

(f)     the dismissal of any of the Cases or the conversion of any of the Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code or the filing by the

Debtors of a motion or other pleading seeking the dismissal of any of the Cases under Section 1112 of the Bankruptcy Code or otherwise;

(g)    the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien against the Secured Creditors' Prepetition Collateral or the Lender's DIP Collateral;

(h)    the failure of the Debtors to perform any of its obligations under this Final Order which materially adversely affects the interests of the Secured Creditors in their Prepetition Collateral or in Lender in the DIP Collateral;

(i)    except as otherwise provided by this Final Order, the entry of an order in these Cases granting any other superpriority administrative expense or lien equal or superior to that granted to Lender;

(j)    the termination of the exclusive period for the Debtors to file a plan of reorganization in any of these Cases;

(k)    the failure of the Debtors to obtain Bankruptcy Court approval of the sale of all or substantially all of the Debtors' assets (the "Asset Sale") within seventy-five (75) days of the Petition Date, or

(l)    the failure of the Debtors to close the Asset Sale within ninety (90) days of the Petition Date.

8.    Additional Events of Default.  The occurrence of any of the following shall also

constitute an Event of Default (remedies as to which may be exercised only pursuant to

Paragraphs 13 and 14 of this Final Order) with respect to the DIP Financing:

(a)    except as provided in any of the other default sections, failure by the Debtors to promptly perform any other obligation or observe any other condition, covenant, term, agreement, or provision required to be performed or observed by the Debtors under this Order within the earlier of (i) five (5) Business Days after notice thereof from Lender or the Secured Creditor to the Debtors, or (ii) ten (10) days after the Debtors first become aware thereof;

(b)    the Debtors' expenses in any calendar month exceeding the Variance (as defined in Paragraph 18 of this Final Order) respecting the Budget, without the Lender's prior written consent or the use by the Debtors of the proceeds of the DIP Financing for any purpose other than as set forth in the Budget;

(c)    a declaration or determination by any court of competent jurisdiction that

any portion of the Indebtedness or the Prepetition Liens, or the liens granted to the Lender pursuant to this Final Order, are null, void, or subordinate; or

(d)   any inaccuracy or untruth in any representation, or warranty in any material respect contained in the DIP Loan Agreement or any of the Prepetition Loan Documents, or of any statement or certification as to facts delivered to Lender pursuant to any DIP Loan Document.

Lender must provide written notice of any Event of Default under this Order to the Debtors, any official committee, other parties entitled to notice pursuant to Federal Rule of Bankruptcy Procedure 2002 and the United States Trustee

9.     Left Intentionally Blank.

10.    Replacement Lien.  Until payment of the Prepetition Indebtedness in full, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and for purposes of section 507(b) of the Bankruptcy Code, as adequate protection to the Secured Creditors for any diminution in the value of its Prepetition Collateral, the Secured Creditors subject to the terms of this Order:

(i)     Will maintain its liens on, and security interests in, the Prepetition Collateral in accordance with the priorities existing immediately prior to the Filing Date, subject only to (1) the liens on, and security interests in, the DIP Collateral granted to the Lender under the DIP Financing, this Order and any final order of this Court, as the case may be; and (2) the Carveout;

(ii)    Shall be granted replacement liens (the "Replacement Liens") on, and security interests in, its Prepetition Collateral (and a priority under Bankruptcy Code § 507(b) to the extent such adequate protection proves inadequate), subject only to (1) the liens on, and security interests in, the DIP Collateral granted to the Lender under the DIP Financing, this Order and any final order of this Court, as the case may be, and (2) the Carveout.

(iii)   To the extend allowable under Section 506(b) of the Bankruptcy Code, shall be entitled to payment by the Debtors of all reasonable out-of-pocket costs and expenses incurred by Prepetition Loan Documents, respectively (including, without limitation, the reasonable fees and disbursements of counsel and any consultant and investment banking firm advising it), in connection with the enforcement and protection of its rights and interests.

(iv)   To the extent of any diminution in value of the Prepetition Collateral of the Lender, shall retain superpriority administrative expense claims pursuant to section 507(b) of the Bankruptcy Code with priority over all other administrative expense claims, whether arising under sections 364(c)(1), 507(b) or otherwise, but subordinate in priority to the Super-priority Claims in respect of the DIP Financing and the Carveout.

(v)   Notwithstanding any other provision hereof, the grant of adequate protection to the Secured Creditors pursuant hereto is without prejudice to the right of the Secured Creditors to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.

11.   Security for DIP Indebtedness; First-Priority Priming Liens.  By the entry of this Final Order, the Lender is granted, as security for the repayment of all amounts of the DIP Indebtedness and subject only to the Carveout to the extent and priority that such lien existed as of the Petition Date, (a) superpriority claim status pursuant to section 364(c)(1) of the Bankruptcy Code senior to any other superpriority claims and (b) will be secured by, pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, a valid and perfected first priority lien on all real and personal property of the Debtors, including without limitation (i) all

existing and after-acquired accounts, chattel paper, deposit accounts, instruments, investment

property, documents, inventory, equipment, general intangibles (including intellectual property),

insurance claims, tort claims, and real estate interests, together with insurance proceeds of any of

the foregoing; (ii) any claims or causes of action belonging to the Debtors or the estates under

Chapter 5 of the Bankruptcy Code; and (iii) any recoveries under section 506(c) of the

Bankruptcy Code to the extent any proceeds of the DIP Financing are used to pay expenses

benefitting any other party (collectively with all proceeds and products of any or all of the

foregoing, the "DIP Collateral").  Either Secured Creditors or Lender, at their respective option,

may release at any time from their liens and security interests any assets determined by the either

to have a risk of liabilities which either of them in their sole discretion deem unacceptable.  With

respect to the DIP Indebtedness, no liens or security interests granted to the Lender, and no claim

of the Lender, shall be subject to subordination to any other liens, security interests, or claims

under Section 510 of the Bankruptcy Code or otherwise.

      12.     Perfection of Liens.  All liens and security interests on or in the DIP Collateral

granted to the Lender by this Final Order and the DIP Loan Documents are deemed to be duly

perfected and recorded under all applicable federal or state or other laws as of the date hereof,

and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen

lien waivers, or other third-party consents or other act shall be required to effect such perfection.

Notwithstanding the provisions of Section 362 of the Bankruptcy Code, the Lender may, in its

sole discretion and at its sole option, file or record or cause the Debtors to obtain any third-party

consents or execute, file, or record, at the Debtors' expense, any such notices of liens and

security interests, mortgages and other similar documents as the Lender may require.  If the

Lender, in its sole discretion, elects to obtain any third-party consents or causes there to be filed

or recorded any such notices, financing statements, mortgages, or other documents with respect

to such security interests and liens, all such third-party consents, financing statements, or similar

documents or taking possession shall be deemed to have been filed or recorded or taken in these

Cases as of the Petition Date but with the priorities set forth in this Final Order. The Lender in

its sole discretion may, but shall not be required to, file a certified copy of this Final Order in any

filing or recording office in any county or other jurisdiction in which the Debtors have real or

personal property and such filing or recording shall be accepted and shall constitute further

evidence of perfection of the Lender's interests in the DIP Collateral.

13.     <u>Modification of Automatic Stay; Remedies</u>.  The automatic stay pursuant to

Section 362 of the Bankruptcy Code (the "<u>Stay</u>") is modified as to the Secured Creditor and

Lender to permit them to perform in accordance with, and exercise, and enforce its rights,

benefits, privileges, and remedies pursuant to this Final Order and the other DIP Loan

Documents without further application or motion to, or order from, the Court (except to the

extent provided in Paragraph 14 below), and regardless of any change in circumstances (whether

or not foreseeable), neither Section 105 of the Bankruptcy Code nor any other provision of the

Bankruptcy Code or applicable law shall be utilized to prohibit the Secured Creditors' or

Lender's exercise and enforcement of any of such rights, benefits, privileges and remedies.  The

Lender is hereby granted leave, among other things, (a) to receive and apply collections on and

proceeds of the DIP Collateral (the "<u>Payments</u>") to the DIP Indebtedness in the manner specified

in this Final Order and the DIP Loan Documents, (b) to file or record any financing statements,

mortgages, or other instruments or other documents to evidence the security interests in and liens

upon the DIP Collateral, (c) to the extent permitted by Section 506(b) of the Bankruptcy Code, to

charge and apply payments to any interest, fees, costs, and expenses and other amounts accruing

at any time under the DIP Loan Documents or this Final Order as provided in the DIP Loan

Documents or this Final Order, (d) to give the Debtors any notice provided for in any of the DIP

Loan Documents or this Final Order, and (e) upon the occurrence of an Event of Default or upon

the Maturity Date, and without application or motion to, or order from the Court (i) to terminate

the Postpetition Financing under this Final Order and the other DIP Loan Documents, (ii) to

declare all DIP Indebtedness immediately due and payable and to require that all contingent DIP

Indebtedness (if any) be cash-collateralized or terminated without liability to the Lender, and (iii)

to cease making loans or other extensions of credit and/or suspend or terminate any obligation of

the Lender to make loans or other extensions of credit under the DIP Loan Documents or this

Final Order.

14.     Other Remedies Upon Default.  Upon the occurrence of any Event of Default or

upon the Maturity Date, the Secured Creditors or Lender shall be entitled to file a motion on

three (3) business days' notice seeking modification of the Stay to allow for the Secured

Creditors' or Lender's exercise of all of its available remedies on notice to the Debtors, any

official committee, other parties entitled to notice pursuant to Federal Rule of Bankruptcy

Procedure 2002 and the United States Trustee (the "Stay Relief Motion") and the Court will

conduct an expedited hearing as promptly as possible regarding the Stay Relief Motion.  The

Debtors shall cooperate with the Secured Creditors and Lender in connection with any permitted

enforcement action by the Lender by, among other things, (a) providing access to the DIP

Collateral to representatives of the Lender, (b) providing the Secured Creditors and Lender

access to their books and records, (c) performing all other obligations set forth in the Prepetition

Loan Documents, this Final Order and/or the other DIP Loan Documents, and (d) taking

reasonable steps to safeguard and protect the DIP Collateral until the Lender can make adequate

provision to protect and safeguard the DIP Collateral.  The Debtors shall not otherwise interfere

or encourage others to interfere with the Secured Creditors' or Lender's enforcement of its

rights.

15.    <u>Superpriority Claims.</u>  Subject to the Carveout, the Lender's claim for repayment

of the DIP Indebtedness shall constitute an allowed administrative-expense claim under 507(b)

of the Bankruptcy Code with priority over all other administrative expense claims, whether

arising under sections 364(c)(1), 507(b) of the Bankruptcy Code or otherwise (the "<u>Superpriority</u>

<u>Claim</u>").

16.    <u>No Surcharge</u>.  At no time during these Cases shall the surcharge provisions of

Section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions under Section

552 of the Bankruptcy Code, or any other legal or equitable doctrine (including unjust

enrichment) be imposed upon the Secured Creditors or Lender and any of the Prepetition

Collateral, DIP Collateral or Superpriority Claim by or for the benefit of any party in interest,

including, without limitation, the Debtors, any of the Estate Professionals (defined below), or

any trustee.

17.    <u>Carveout</u>.  Subject to the remaining provisions of this paragraph, the Secured

Creditors' or Lender's liens on and security interests in the Prepetition Collateral, DIP Collateral

and its Superpriority Claim shall be subject to only (a) the payment of any unpaid fees payable

pursuant to 28 U.S.C. § 1930 and (b) the aggregate allowed unpaid fees and expenses payable to

professional persons retained by the Debtors under Section 327 of the Bankruptcy Code

(collectively, the "<u>Estate Professionals</u>") whether such fees and expenses were incurred and/or

allowed prior to or subsequent to an occurrence of an Event of Default, <u>provided</u>, <u>however</u>, that

the aggregate amount of the unpaid Estate Professionals fees and expenses incurred after the

occurrence of an Event of Default to which the Secured Creditors' or Lender's respective

security interests in the Prepetition Collateral, DIP Collateral and Superpriority Claim are subject

may not exceed $100,000 (the amounts specified in clauses (a) and (b) of this paragraph,

including the limitations therein, collectively, are the "Carveout").  The Carveout shall not be

used in connection with (i) preventing, hindering or delaying the Secured Creditors' or Lender's

enforcement or realization upon the Prepetition Collateral and DIP Collateral after an Event of

Default has occurred; (ii) using or seeking to use cash collateral or selling or otherwise disposing

of the Prepetition Collateral without the consent of the Secured Creditors and Lender; (iii) using

or seeking to use any insurance proceeds without the consent of the Secured Creditors and

Lender; (iv) incurring additional postpetition indebtedness without the consent of the Secured

Creditors and Lender; and (v) litigating, objecting to or contesting in any manner or raising any

defenses to the validity, extent, amount, perfection, priority or enforceability of the Prepetition

Loan Documents, the DIP Loan Documents and the Indebtedness, or asserting any claims or

causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy

Code against the Secured Creditors or Lender, their affiliates, or their respective officers,

directors, employees, members, partners, principals, managers, agents, attorneys, investment

bankers, professionals and advisors.

      18.     <u>Use of Loan Proceeds</u>.  The proceeds of any loans or other extensions of credit

made by the Lender to the Debtors pursuant to this Final Order and the DIP Loan Documents

shall be used pursuant to the Budget, as the Budget may be amended or supplemented from time

to time with the Lender's advance written consent; <u>provided</u>, <u>however</u>, that the total amount of

the Commitment may not be increased except by further order of this Court; and further provided

that the Debtors shall be (a) deemed to be in compliance with the Budget so long as its total cash

disbursements, on a monthly basis, are less than 110% of the total amount provided for in the

Budget for each respective month period (collectively, the "Variance") and (b) permitted to pay

expenses in the ordinary course of business in accordance with the Budget and the Variance

unless and until this Court enters a subsequent order to the contrary. The extension of DIP

Financing shall not be construed as a commitment to continue to provide DIP Financing after the

occurrence of an Event of Default or beyond the Maturity Date.

19.    Covenants.  The Debtors shall timely comply with all of the covenants set forth in

this Final Order and the DIP Loan Documents.

20.    Application of DIP Collateral Proceeds.  Any Payment of proceeds of DIP

Collateral received by the Debtors at a time when there is outstanding DIP Indebtedness shall be

immediately tendered to the Lender and shall be applied finally and indefeasibly to the DIP

Indebtedness until it is paid in full.  Any Payment of proceeds of DIP Collateral received by the

Debtor after repayment in full of the DIP Indebtedness shall be held by the Debtor pending

future application to future advances of DIP Indebtedness or further order of the Bankruptcy

Court.

21.    Prepetition Cash Collateral Procedures.  From and after the date of the entry of

this Order, all cash proceeds of any Prepetition Collateral shall be applied against the Prepetition

Indebtedness.

22.    Lender's and Secured Creditors' Reservation of Rights; No Waiver.  The Secured

Creditors and Lender shall not be deemed to have waived, and shall be deemed to have expressly

reserved, any and all claims, defenses, rights, and remedies it has pursuant to, as the case may be,

any or all of the Prepetition Loan Documents, the DIP Loan Documents, the Bankruptcy Code,

and/or other applicable law.  In addition, the rights and obligations of the Debtor, and the rights,

claims, liens, security interests, and priorities of the Secured Creditors or Lender, as the case may be, arising under this Final Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests, and priorities granted under, as the case may be, the Prepetition Loan Documents. Without limiting the generality of the foregoing, the Secured Creditors or Lender may request from this Court any such additional protection as it may reasonably require with respect to, as the case may be, the Prepetition Indebtedness, the DIP Indebtedness, or otherwise. Nothing in this Final Order shall be deemed to constitute a finding with respect to the adequacy of the protection of the Secured Creditors' or Lender's interests in the Prepetition Collateral or DIP Collateral.

23.    <u>Order Binding on Successors and Assigns</u>. The provisions of this Final Order shall be binding upon and inure to the benefit of the Secured Creditors, Lender, the Debtors, and their respective successors and assigns, including any trustee or other estate representative appointed as a representative of the Debtors' estates or of any successor estates.

24.    <u>Effect of Dismissal, Conversion, or Substantive Consolidation</u>. If any or all of the Cases are dismissed, converted, otherwise superseded, or substantively consolidated, the Secured Creditors' and Lender's rights and remedies under this Final Order and the DIP Loan Documents shall be and remain in full force and effect as if the Cases had not been dismissed, converted, superseded, or substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion, supercission, or substantive consolidation, all of the terms and conditions of this Final Order, including, without limitation, the liens and the priorities granted under this Final Order, shall remain in full force and effect.

25.    <u>Releases and Validation of Prepetition Indebtedness and Liens; Allowance of Secured Claim</u>. The releases, discharges, waivers, and agreements set forth in this paragraph

will be deemed effective upon the entry of this Final Order, subject only to the Reservation of

Rights (as defined in Paragraph 27 of this Financing Order) in favor of any official committee

and other parties in interest (other than the Debtors) upon the express terms and conditions set

forth in Paragraph 27 and the Final Hearing on the Financing Motion. The Debtors and their

estates shall be deemed to have (a) released and waived any and all defenses (including, without

limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority,

enforceability, and nonavoidability (under Sections 510, 544, 545, 547, 548, 550, 551, 552, or

553 of the Bankruptcy Code or otherwise) of the Prepetition Indebtedness and the Prepetition

Liens created by the Prepetition Loan Documents in favor of the Secured Creditor; and (b)

agreed, without further Court order and without the need for the filing of any proof of claim, to

the allowance pursuant to Sections 502 and 506 of the Bankruptcy Code of the prepetition claims

of the Secured Creditors on account of the Prepetition Indebtedness as secured claims according

to the Secured Creditors' books and records, the principal aggregate amount of which is not less

than approximately $6,345,887.13 as of the Petition Date, plus accrued prepetition and

postpetition interest, fees, expenses, and other amounts chargeable under the Prepetition Loan

Documents and this Final Order.

26.    _Lender's and Secured Creditors' Relationship with Debtors_.  Acknowledging that

the Debtors may be affiliates of the Secured Creditors or Lender, the Lender and Secured

Creditors nonetheless, solely by virtue of making decisions to make any Loans or other

extensions of credit to the Debtors, in administering any Loans or other extensions of credit, or

taking any other actions reasonably related to the financing approved under this Final Order,

shall have no liability to any third party and shall not be deemed to be in control of the

operations of the Debtors or to be acting as a "controlling person," "responsible person," or

"owner or operator" with respect to the operation or management of the Debtors (as such terms

or any similar terms are used in the Internal Revenue Code, the United States Comprehensive

Environmental Response, Compensation and Liability Act, or any similar federal or state

statute), and the Secured Creditors' and Lender's lending relationship with the Debtors shall not

constitute or be deemed to constitute a joint venture or partnership of any kind between the

Secured Creditors and Lender and the Debtors.

     27.    <u>Objections by Parties in Interest; Reservation of Rights</u>.  All of the provisions of

this Final Order shall be binding on the Debtors and, subject to Reservation of Rights set forth in

this paragraph and the Final Hearing, on all creditors and other parties in interest.  Except as to

the DIP Indebtedness, the Postpetition Liens and the Superpriority Claim granted as adequate

protection to the Secured Creditors and Lender, there shall be reserved for any committee and

any other party in interest (other than the Debtors) any and all rights, actions, claims, and

defenses they may have in this Case, including but not limited to the right to challenge the

validity and priority of, and to seek to subordinate, the prepetition liens, mortgages, and security

interests of the Secured Creditors or any other party asserting such rights (the "<u>Reservation of</u>

<u>Rights</u>").

     28.    <u>Effect of Modification of Order</u>.  The Debtors shall not, without the Secured

Creditors' and Lender's prior written consent, seek to modify, vacate, or amend this Final Order

or any DIP Loan Document.  If any provision of this Final Order is modified, vacated, or stayed

by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect

(a) the validity of any DIP Indebtedness outstanding immediately prior to the effective time of

such stay, modification, or vacation, or (b) the validity and enforceability of any lien, priority,

right, privilege, or benefit authorized by this Final Order with respect to any such DIP

Indebtedness.  Notwithstanding any such stay, modification, or vacatur, any DIP Indebtedness

outstanding immediately prior to the effective time of such modification, stay, or vacatur shall be

governed in all respects by the original provisions of this Final Order, and the Secured Creditors

and Lender shall be entitled to all the rights, privileges, and benefits, including, without

limitation, the security interests and priorities granted herein, with respect to all such DIP

Indebtedness.

29.     <u>Safe Harbor</u>.  The Court has considered and determined the matters addressed in

the Final Order pursuant to its powers under the Bankruptcy Code, including the power to

authorize the Debtors to obtain credit on the terms and conditions upon which the Debtors and

the Lender have agreed, and has found that the Lender acted in good faith in connection with

providing the DIP Loan to the Debtors.  Accordingly, each of such terms and conditions

constitutes a part of the authorization under Section 364 of the Bankruptcy Code, and is therefore

subject to the protections contained in Section 364(e) of the Bankruptcy Code.

30.     <u>Notice of Release</u>.  The Debtors shall within five (5) days after entry of this Final

Order provide notice of this Final Order and the releases, Reservation of Rights, and 506(c)

waiver provided herein (i) by first-class mail to all known creditors and holders of interests in the

Debtors and (ii) by publication in the Chicago Tribune and Chicago Defender.  Such notice may

be combined with notices that the Debtors will provide regarding any sale of their assets and/or

the commencement of these Cases.

31.     <u>Miscellaneous Provisions</u>.

(a)     <u>Sale of Collateral; Right to Credit Bid</u>.  Pursuant to section 363(k) of the

Bankruptcy Code, the Secured Creditors and Lender shall have the right to use the Indebtedness

to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral

or Prepetition Collateral.  Upon the closing of a sale of all or any portion of the DIP Collateral or

Prepetition Collateral, the proceeds thereof shall be remitted to the Secured Creditor and Lender,

as applicable.

       (b)    <u>Indemnification</u>.  The Debtors must indemnify and hold the Lender

harmless from and against any and all suits, actions, proceedings, claims, damages, losses,

liabilities, and expenses (including, without limitation, reasonable attorneys' fees and

disbursements, including those incurred upon any appeal) which may be instituted or asserted

against or incurred by the Lender as the result of its having entered into the DIP or having

extended credit thereunder, excluding any such suits, actions, proceedings, claims, damages,

losses, liabilities, or expenses arising from the gross negligence or willful misconduct of the

Lender.

       (c)    <u>No Marshaling</u>.  The Lender and the DIP Collateral shall not be subject to

the doctrine of marshaling.

       (d)    <u>No Waiver</u>.  The failure of the Lender at any time or time hereafter to

require strict performance by the Debtors (or by any trustee) of any provision of this Final Order

or the DIP Loan Documents shall not waive, affect, or diminish any right of the Secured

Creditors or Lender thereafter to demand strict compliance and performance therewith.  No delay

on the part of the Secured Creditors or Lender in the exercise of any right or remedy under this

Final Order or the DIP Loan Documents shall preclude any other or further exercise of any right

or remedy, and the Secured Crediotr and Lender shall not be deemed to have suspended or

waived any of its rights or remedies under this Final Order, the Prepetition Loan Documents, the

DIP Loan Documents, the Bankruptcy Code, or other applicable law unless such suspension or

waiver is in writing, signed by a duly authorized officer of the Secured Creditor or Lender, as

applicable, and directed to the Debtors.

    32.    <u>Controlling Effect of Final Order</u>.  To the extent that any provision of this Final

Order conflicts with any provision of the Financing Motion, any Prepetition Loan Document, or

any DIP Loan Document, the provision of this Final Order shall control.

    33.    <u>Order Effective</u>.  This Final Order shall be effective as of the date of entry by the

Court.

    34.    <u>Final Hearing</u>.  The Final Hearing on the Financing Motion was held on October

13, 2009 ("<u>Final Hearing</u>").

Dated:   **OCT 1 3 2009**       Entered:   _Pa Stoll_

Order prepared by:

Robert M. Fishman (#3124316)
Brian L. Shaw (#6216834)
Kimberly Bacher (#6285677)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151  telephone
(312) 980-3888  facsimile

Exhibit A

## TERM SHEET

1. **LENDER**: PACESETTER SBIC FUND, INC.

2. **BORROWERS**: PERPETUA HOLDINGS OF ILLINOIS, INC., PERPETUA-BURR OAK HOLDING OF ILLINOIS, LLC AND PERPETUA, INC.

3. **FACILITY**: $475,000

4. **PURPOSE**: Maintain continued operations, which include the payment of employees and professionals and the satisfaction of other working capital and operational needs.

5. **USE OF CASH**: The parties shall agree to an operating budget, which shall be an exhibit to the DIP financing order.

6. **DISBURSEMENT**: Lender shall disburse $280,000 after the Interim Order Authorizing Debtor to Obtain Postpetition Financing and Granting Superpriority Administrative Expense Claims, Priming Liens and Security Interests, and Adequate Protection (the "Interim Order") has been approved by the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court").

7. **INTEREST RATE**: Ten percent (10%) per annum. In the event of an Event of Default (as set forth below), interest shall accrue at a rate of eighteen percent (18%) per annum.

8. **AMORTIZATION**: All payments of principal and interest shall be due on the earlier of (1) the expiration of the term of the loan, (2) upon an event of default as set forth below, or (3) a later date as agreed to in writing by the Lender and Borrowers.

9. **EVENT(S) OF DEFAULT**: The following shall constitute an Event of Default:

   a. Borrowers' failure to pay all or any portion of the Facility when due and payable, or when declared due and payable.

   b. The entry of an order or ruling (which has not been withdrawn, dismissed, or reversed) (1) granting additional financing under Section 364(c) or (d) of the Bankruptcy Code not otherwise contemplated in this Term Sheet; (2) except as contemplated in this Term Sheet, granting any lien superior to Lender's interests upon or affecting the Lender and Mesbic Ventures, Inc.'s (collectively, the "Secured Creditors") Prepetition or Lender's DIP Collateral; or (3) except as contemplated in this Term Sheet, authorizing the use of cash collateral of the Secured Creditors under Section 363(c) of the Bankruptcy Code without the prior written consent of Secured Creditors;

   c. The entry of an order amending, supplementing, staying, vacating, or otherwise modifying the Interim Order without the written consent of the Lender and the Borrowers;

d.   The payment by the Borrowers of, or application by the Borrowers for authority to pay any prepetition claim without Lender's prior written consent;

e.   The appointment of an interim or permanent trustee in the Borrowers' bankruptcy cases (the "Cases") or the appointment of an examiner in the Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Borrowers;

f.   The entry of an order or ruling disposing or depriving any of the Borrowers of their right to operate their businesses and hold their property;

g.   The dismissal of any of the Cases or the conversion of any of the Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code or the filing by the Borrowers of a motion or other pleading seeking the dismissal of any of the Cases under Section 1112 of the Bankruptcy Code or otherwise;

h.   The entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien against the Secured Creditors' Prepetition Collateral or the Lender's DIP Collateral;

i.   The failure of the Borrowers to perform any of their obligations which materially adversely affects the interests of the Secured Creditors in their Prepetition Collateral or in Lender in the DIP Collateral;

j.   Except as otherwise contemplated in this Term Seet, the entry of an order in the Cases granting any other superpriority administrative expense or lien equal or superior to that granted to Lender;

k.   The termination of the exclusive period for the Borrowers to file a plan of reorganization in any of the Cases;

l.   The failure of the Borrowers to obtain Bankruptcy Court approval of the sale of all or substantially all of the Debtors' assets (the "Asset Sale") within seventy-five (75) days of the date the Borrowers filed for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date");

m.   The failure of the Borrowers to close the Asset Sale within ninety (90) days of the Petition Date.

n.   Except as provided in any of the other default sections, failure by the Borrowers to promptly perform any other obligation or observe any other condition, covenant, term, agreement, or provision required to be performed or observed by the Borrowers under this Term Sheet or any of the Prepetition Loan Documents within the earlier of (i) five (5) Business Days after notice thereof from Lender or the Secured Creditors to the Borrowers, or (ii) ten (10) days after the Borrowers first become aware thereof;

o.    the Borrowers' expenses in any calendar month exceeding the variance respecting the budget attached to the Interim Order, without the Lender's prior written consent or the use by the Borrowers of the proceeds of the DIP Financing for any purpose other than as set forth in the Budget;

p.    A declaration or determination by any court of competent jurisdiction that any portion of the indebtedness or the prepetition liens, or the liens granted to the Lender pursuant to the Interim Order, are null, void, or subordinate; or

q.    Any inaccuracy or untruth in any representation, or warranty in any material respect contained.

10.    **SECURITY**:  First lien on all of the Borrowers' real and personal property, including (i) all existing and after-acquired accounts, chattel paper, deposit accounts, instruments, investment property, documents, inventory, equipment, general intangibles (including intellectual property), (ii) insurance claims, tort claims, and real estate interests, together with insurance proceeds of any of the foregoing, and (iii) any recoveries under section 506(c) of the Bankruptcy Code to the extent any proceeds of the DIP Financing are used to pay expenses benefitting any other party.

11.    **PRIORITY**:  A priority provided by 11 U.S.C. § 364(c)(1) senior to any other superpriority claims.

12.    **TERM**:  Facility comes due on the earlier of (a) December 15, 2009 (if the financing has not been further extended by order of the Bankruptcy Court) (b) the date of acceleration of the DIP Indebtedness upon the occurrence of an Event of Default; or (c) such later date as agreed to in writing by the Lender and the Borrowers (or its successor in interest).

13.    **CONDITIONS PRECEDENT TO FUND**:  Lender's performance is subject to the approval of the Bankruptcy Court presiding over the Chapter 11 reorganization of the Borrowers upon written application and after notice and a hearing.

**Perpetua, Inc.,Cedar Park and Burr Oak**

| | Projected Monthly Cash Flow - Day 1-30 | | | Consolidated Total |
|---|---|---|---|---|
| | Corp | CPC | CBO | |
| Operating Revenue | $ 45,000 | $ 100,000 | $ - | $ 145,000 |
| Cost of Goods Sold | $ | $ 13,000 | $ - | $ 13,000 |
| **Gross Profit** | $ 45,000 | $ 87,000 | $ - | $ 132,000 |
| **Operating Expenses** | | | | |
| Salaries, taxes and benefits;Independent Contractors | $ 32,000 | $ 63,000 | $ 37,000 | $ 132,000 |
| Corp Allocation-Acctg;Admin;Operation | $ - | $ 9,500 | $ 12,000 | $ 21,500 |
| Corp Allocation-Other Corp Expense | | $ 6,000 | $ 6,000 | $ 12,000 |
| Detbor Professional Fees - Bankruptcy | $ 20,000 | $ 35,000 | $ 35,000 | $ 90,000 |
| Other Bankruptcy Costs | $ 5,000 | $ 10,000 | $ 10,000 | $ 25,000 |
| Utilities | | $ 2,000 | $ 3,000 | $ 5,000 |
| Insurance | $ 5,000 | $ 800 | $ 1,000 | $ 6,800 |
| Janitorial | | $ 500 | $ 500 | $ 1,000 |
| Other Facility Expense | $ 2,000 | $ 3,200 | $ 26,000 | $ 31,200 |
| Auto Repair and Maint | | $ 1,500 | $ 400 | $ 1,900 |
| Fuel and Oil | | $ 1,500 | $ 2,000 | $ 3,500 |
| Auto Insurance | | $ 200 | $ 600 | $ 800 |
| Promotion and advertising | $ - | $ 1,200 | $ 1,000 | $ 2,200 |
| Travel | $ 6,000 | | | $ 6,000 |
| Maint Equipment | | $ 2,500 | $ 2,000 | $ 4,500 |
| Telecommunications | | $ 2,000 | $ 1,500 | $ 3,500 |
| Landscaping | | $ 5,000 | $ 10,000 | $ 15,000 |
| Supplies | | $ 2,500 | $ 1,500 | $ 4,000 |
| Other G&A | | $ 2,000 | $ 1,100 | $ 3,100 |
| **Cash Expenditures** | $ 70,000 | $ 148,400 | $ 150,600 | $ 369,000 |
| **Net Cash Flow** | $ (25,000) | $ (61,400) | $ (150,600) | $ (237,000) |

**Perpetua, Inc.,Cedar Park and Burr Oak**

| | Corp | CPC | CBO | Consolidated Total |
|---|---|---|---|---|
| **Projected Monthly Cash Flow - Day 31-60** | | | | |
| Operating Revenue | $ 45,000 | $ 100,000 | $ 35,000 | $ 180,000 |
| Cost of Goods Sold | | $ 13,000 | $ 4,600 | $ 17,600 |
| **Gross Profit** | $ 45,000 | $ 87,000 | $ 30,400 | $ 162,400 |
| **Operating Expenses** | | | | |
| Salaries, taxes and benefits;Independent Contractors | $ 32,000 | $ 75,000 | $ 46,000 | $ 153,000 |
| Corp Allocation-Acctg;Admin;Operation | $ - | $ 9,500 | $ 12,000 | $ 21,500 |
| Corp Allocation-Other Corp Expense | | $ 6,000 | $ 6,000 | $ 12,000 |
| Debtor Professional Fees - Bankruptcy | $ 20,000 | $ 35,000 | $ 35,000 | $ 90,000 |
| Other Bankruptcy Costs | $ 5,000 | $ 10,000 | $ 10,000 | $ 25,000 |
| Utilities | | $ 2,000 | $ 3,000 | $ 5,000 |
| Insurance | $ 5,000 | $ 800 | $ 1,000 | $ 6,800 |
| Janitorial | | $ 500 | $ 500 | $ 1,000 |
| Other Facility Expense | $ 2,000 | $ 3,200 | $ 51,000 | $ 56,200 |
| Auto Repair and Maint | | $ 1,500 | $ 400 | $ 1,900 |
| Fuel and Oil | | $ 1,500 | $ 2,000 | $ 3,500 |
| Auto Insurance | | $ 200 | $ 600 | $ 800 |
| Promotion and advertising | $ - | $ 1,200 | $ 1,000 | $ 2,200 |
| Travel | $ 6,000 | | | $ 6,000 |
| Maint Equipment | | $ 2,500 | $ 2,000 | $ 4,500 |
| Telecommunications | | $ 2,000 | $ 1,500 | $ 3,500 |
| Landscaping | | $ 5,000 | $ 10,000 | $ 15,000 |
| Supplies | | $ 2,500 | $ 1,500 | $ 4,000 |
| Other G&A | | $ 2,000 | $ 1,100 | $ 3,100 |
| **Cash Expenditures** | $ 70,000 | $ 160,400 | $ 184,600 | $ 415,000 |
| **Net Cash Flow** | $ (25,000) | $ (73,400) | $ (154,200) | $ (252,600) |

Perpetua, Inc.,Cedar Park and Burr Oak

| | Projected Monthly Cash Flow - Day 61-90 | | | Consolidated |
| --- | --- | --- | --- | --- |
| | Corp | CPC | CBO | Total |
| Operating Revenue | $ 45,000 | $ 100,000 | $ 55,000 | $ 200,000 |
| Cost of Goods Sold | $ - | $ 13,000 | $ 7,000 | $ 20,000 |
| **Gross Profit** | **$ 45,000** | **$ 87,000** | **$ 48,000** | **$ 180,000** |
| **Operating Expenses** | | | | |
| Salaries, taxes and benefits;Independent Contractors | $ 32,000 | $ 66,000 | $ 38,000 | $ 136,000 |
| Corp Allocation-Acctg,Admin;Operation | $ - | $ 9,500 | $ 12,000 | $ 21,500 |
| Corp Allocation-Other Corp Expense | | $ 6,000 | $ 6,000 | $ 12,000 |
| Debtor Professional Fees - Bankruptcy | $ 15,000 | $ 22,500 | $ 22,500 | $ 60,000 |
| Other Bankruptcy Costs | $ 5,000 | $ 5,000 | $ 5,000 | $ 15,000 |
| Utilities | | $ 2,000 | $ 3,000 | $ 5,000 |
| Insurance | $ 5,000 | $ 800 | $ 1,000 | $ 6,800 |
| Janitorial | | $ 500 | $ 500 | $ 1,000 |
| Other Facility Expense | $ 2,000 | $ 3,200 | $ 41,000 | $ 46,200 |
| Auto Repair and Maint | | $ 1,500 | $ 400 | $ 1,900 |
| Fuel and Oil | | $ 1,500 | $ 2,000 | $ 3,500 |
| Auto Insurance | | $ 200 | $ 600 | $ 800 |
| Promotion and advertising | $ - | $ 1,200 | $ 1,000 | $ 2,200 |
| Travel | $ 6,000 | | | $ 6,000 |
| Maint Equipment | | $ 2,500 | $ 2,000 | $ 4,500 |
| Telecommunications | | $ 2,000 | $ 1,500 | $ 3,500 |
| Landscaping | | $ 5,000 | $ 9,000 | $ 14,000 |
| Supplies | | $ 2,500 | $ 1,500 | $ 4,000 |
| Other G&A | | $ 2,000 | $ 1,100 | $ 3,100 |
| **Cash Expenditures** | **$ 65,000** | **$ 133,900** | **$ 148,100** | **$ 347,000** |
| **Net Cash Flow** | **$ (20,000)** | **$ (46,900)** | **$ (100,100)** | **$ (167,000)** |