**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 Cases |
| PERPETUA-BURR OAK HOLDINGS OF ) | |
| ILLINOIS, L.L.C., *et al.,* ) | Case No. 09-34022 |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Hon. Pamela S. Hollis |
| ) | |
| ) | Objection Deadline: Jan. 26, 2010 |

**NOTICE OF MOTION**

     PLEASE TAKE NOTICE that on January 28, 2010 at 10:00 a.m., the undersigned shall appear before the Honorable Pamela S. Hollis, in Courtroom 644, 219 South Dearborn Street, Chicago, Illinois, and then and there present the DEBTORS' MOTION FOR THE ENTRY OF AN ORDER (1) AUTHORIZING DEBTOR TO (A) OBTAIN ADDITIONAL POSTPETITION FINANCING AND (B) GRANTING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, PRIMING LIENS AND SECURITY INTERESTS AND ADEQUATE PROTECTION AND (2) GRANTING RELATED RELIEF**,** at which time you may appear if you deem fit.

Dated: January 13, 2010

          Respectfully submitted,

          Perpetua, Inc.
          Perpetua Holdings of Illinois, Inc.
          Perpetua-Burr Oak Holdings of Illinois, L.L.C.

          By:    */s/ Brian L. Shaw*
                     One of their attorneys

Robert M. Fishman (#3124316)
Brian L. Shaw (#6216834)
Kimberly Bacher (#6285677)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151  telephone
(312) 980-3888  facsimile

{7236 MOT A0249754.DOC 3}

# CERTIFICATE OF SERVICE

Brian L. Shaw certifies that he caused to be served a true copy of the above and foregoing DEBTORS' MOTION FOR THE ENTRY OF AN ORDER (1) AUTHORIZING DEBTOR TO (A) OBTAIN ADDITIONAL POSTPETITION FINANCING AND (B) GRANTING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, PRIMING LIENS AND SECURITY INTERESTS AND ADEQUATE PROTECTION AND (2) GRANTING RELATED RELIEF upon the attached Service List via in the manner so indicated on this 13th day of January, 2010.

/s/ *Brian L. Shaw*

## *Mailing Information for Case 09-34022*

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive e-mail notices for this case.

- Kimberly A Bacher    kbacher@shawgussis.com
- Sisavanh B Baker    sibaker@cookcountygov.com
- Aaron R. Bilton    aaronbilton@ameritech.net
- Carl B Boyd    starksboyd@sbcglobal.net
- Patience R Clark    prc@clarklawchicago.com
- Nathan F Coco    ncoco@mwe.com
- Joseph R Curcio    info@curcio-law.com, kmillan@curcio-law.com
- Yao O Dinizulu    dinizulu@dinizululawgroup.com
- Faith Dolgin    faith.dolgin@illinois.gov
- Robert M Fishman    rfishman@shawgussis.com
- Jamie G Goldstein    jgoldstein@gdmlawfirm.com
- Kenneth T Goldstein    ken@krislovlaw.com, ecf@krislovlaw.com
- Blake W Horwitz    bhorwitz@hrbattorneys.com, sboshears@rsbmlaw.com
- Gregory J Jordan    gjordan@akjltd.com
- Dan Klein    dakchicago@yahoo.com
- Robert D Kreisman    bob@robertkreisman.com
- Clinton A Krislov    clint@krislovlaw.com
- Vincent E. Lazar    vlazar@jenner.com, lyap@jenner.com;docketing@jenner.com
- Anthony J Masciopinto    amasciopinto@kmklawllp.com
- James D. Montgomery    james2@jdmlaw.com
- William T Neary    USTPRegion11.ES.ECF@usdoj.gov
- Elliot Pollock    pollocklaw@sbcglobal.net, rettigb@hotmail.com
- Scott C Polman    spolman.law@comcast.net
- Joseph A Power    joepower@prslaw.com, dkroger@prslaw.com
- Aron D Robinson    adroblaw@aol.com
- Richard A. Saldinger    rsaldinger@shawgussis.com
- Brian L Shaw    bshaw100@shawgussis.com, bharrington@shawgussis.com
- Zachary K. Sims    zacharysims@aol.com
- Kathleen A Stetsko    kstetsko@perkinscoie.com
- Daniel A Zazove    docketchi@perkinscoie.com
- Thomas A Jr Zimmerman    tom@attorneyzim.com

*Via Electronic Mail*

Steven J. Plotkin  siplaw@sbcglobal.net
Darrell Phillips  revdrdlp@comcast.net
Shelby H. Karish  shelby@walnerlaw.com
Blake W. Horwitz  bwhorwitz@hrbattorneys.com
Deidre Baumann  baumannesq@worldnet.alt.net
Kenneth T. Goldstein  ken@krislovlaw.com
Aron D Robinson  adroblaw@aol.com
Felicia M. Vacca  fmv1@ntrs.com
Terry Blanchard  tblanchard@barclaydixon.com
Grant S. Palmer  Palmer@BlankRome.com
Louis H. Kozloff  Kozloff@BlankRome.com
Ryan P. Stewart  Stewart-R@BlankRome.com
Kevin W. Doherty  kwd@doherty-progar.com
James Geoly  jgeoly@burkelaw.com
Susan M. Horner  shorner@burkelaw.com
Arlene M. Embrey  arlene.embrey@sba.gov
Paul J. Gaynor  pgaynor@atg.state.il.us
Alexia M. Kulwiec  kulwieca@seiu1.org
Anthony J. Masciopinto  amasciopinto@kmklawllp.com


*Via U.S. Mail*

G. Allen Mayer, Asst. Cnsl.
Jessica A. Sohl, Asst. Cnsl.
Illinois Office of the Comptroller
100 West Randolph, 15-500
Chicago, IL 60601

Gary M. Griffin
General Law Bureau
Attorney General's Office
100 W. Randolph St.
13th Fl.
Chicago, IL 60601

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| PERPETUA-BURR OAK HOLDINGS OF ILLINOIS, L.L.C., *et al.,* | ) ) | Case No. 09-34022 (Jointly Administered) |
| | ) | |
| Debtors. | ) | Hon. Pamela S. Hollis |
| | ) | |
| | ) ) | Hearing Date: January 28, 2010 Objection Deadline: January 26, 2010 |

**MOTION FOR THE ENTRY OF AN ORDER (1) AUTHORIZING DEBTOR TO (A) OBTAIN ADDITIONAL POSTPETITION FINANCING AND (B) GRANTING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, PRIMING LIENS AND SECURITY INTERESTS AND ADEQUATE PROTECTION AND (2) GRANTING RELATED RELIEF**

Perpetua, Inc. ("Perpetua"), Perpetua Holdings of Illinois, Inc. d/b/a Cedar Park Cemetery ("Cedar Park") and Perpetua Burr-Oak Holdings of Illinois, L.LC. d/b/a Burr Oak Cemetery ("Burr Oak", collectively, with Cedar Park and Perpetua, the "Debtors" or "Perpetua Entities"), for its *Motion Pursuant to Sections 105, 362, 363, and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure for the Entry of an Order (1) Authorizing the Debtor to (A) Obtain Additional Secured Post-Petition Financing and (B) Grant Priming Liens, Superpriority Administrative Expense Status, and Adequate Protection and (2) Granting Related Relief* (the "Financing Motion"), respectfully state as follows:

# I. RULE 4001 SUMMARY STATEMENT[1]

1.      This Financing Motion seeks authority to obtain post-petition financing ("Additional DIP Financing") from (a) US Trust, not individually, but solely as trustee (the "BOC Trustee") of the Burr Oak Cemetery Perpetual Care Trust, and (b) the Northern Trust Bank, not individually, but solely as trustee (the "CPC Trustee," collectively with the BOC Trustee, the "Trustee-Lenders") of the Cedar Park Cemetery Perpetual Care Trust, on a Superpriority administrative and first-priority priming lien basis, subject to the Carveout exception set forth below, up to the aggregate principal amount of $500,000 (as allocated below) pursuant to sections 364(c) of the Bankruptcy Code.

2.      The Trustee-Lender's commitment to provide the Additional DIP Financing is conditioned upon (a) the entry of a final order substantially in the form of the proposed order ("Order") filed contemporaneously herewith, authorizing borrowing by the Debtors on terms and conditions set forth in the Order and granting adequate protection and other related relief, (b) the consent of Pacesetter SBIC Fund, Inc. ("PSF") to (i) having their Post-Petition Liens against the Debtors' assets, including the DIP Collateral, primed by the liens being granted to the Trustee-Lenders under the Order and (ii) the granting of the Trustee-Lenders super priority claims under the Order (and the written waiver of any event of default under the Debtors Post-Petition Loan Agreements with PSF caused by the incurrence of the Additional DIP Financing and granting of superior superpriority claims) and (c) the consent (or conveyance of no objection) of Mesbic Ventures, Inc. ("Mesbic").

3.      The material terms of the Additional DIP Financing are as follows:

---

[1] Capitalized terms used in this Summary Statement section shall have the same meanings given to them later in this Motion.

- Loan Amount. The Additional DIP Financing will be up to the principal amount of $250,000 from the BOC Trustee and $250,000 from the CPC Trustee.[2] *See* Order, ¶ 3.

- Borrowing Conditions. The Additional DIP Financing shall be subject to the terms of the Order, and the proceeds thereof shall only be used for "Care" as defined under 760 ILCS 100/2, in accordance with such expenditures as set forth in the budget ("Budget") attached to the Order (I) Authorizing Debtors To Obtain Secured Post-Petition Financing, (2) Granting Priming Liens, Superpriority Administrative Expense Status, And Adequate Protection, (3) Modifying The Automatic Stay, And (4) Authorizing Debtor To Enter Into Post-Petition Agreements With Its Trustee-Lenders, as such Budget has been and is subsequently amended by further order of the Court or with the Lenders' advance written consent; *provided, however*, that the total amount of the Additional DIP Financing may not be increased except by further order of this Court. *See* Order, ¶¶ 2 and 5.

- Interest. All Additional DIP Indebtedness (as defined in the Order) shall bear interest at the rate of ten percent (10 %) per annum, except upon the occurrence and continuation of an Event of Default, in which event interest shall accrue at a rate of eighteen percent (18 %) per annum. *See* Order, ¶ 4.

- Maturity. Except as the Trustee-Lenders in their sole discretion agree otherwise in writing, (a) the Trustee-Lenders' willingness to make loans pursuant to the authorization granted by the Order shall cease, (b) all Additional DIP Indebtedness shall be immediately due and payable in cash, and (c) the Trustee-Lenders shall have the enforcement rights set forth in Paragraphs 12 and 13 of the Order, upon the earlier (the "Maturity Date") of (a) May 31, 2010 (if the Additional DIP Financing has not been

---

[2] The loan proceeds will be advanced from the corpus of the Debtors' respective Perpetual Care Trusts.

{7236 MOT A0249754.DOC 3} 3

further extended by order of the Bankruptcy Court); (b) the date of acceleration of the Additional DIP Indebtedness upon the occurrence of an Event of Default; or (c) such later date as agreed to in writing by the applicable Trustee-Lenders and the Debtors (or any successor in interest). *See* Order, ¶ 6.

- Security and Adequate Protection. The Trustee-Lenders will be granted, as security for the repayment of all amounts of the Additional DIP Indebtedness and subject only to the Carveout, (a) superpriority claim status pursuant to section 364(c)(1) of the Bankruptcy Code senior to any other superpriority claims (b) will be secured by, pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, a valid and perfected first priority priming lien in and on all of the DIP Collateral and (c) retain their rights under 760 ILCS 100/15b. *See* Order, ¶¶ 9 and 11.

- Events of Default. Each of the following constitute an "Event of Default" under the Order (*see* Order, ¶ 8):
  - the entry of an order or ruling granting any lien superior to Trustee-Lenders' interests in Trustee-Lenders' DIP Collateral (as defined below).
  - the failure to pay when due and payable, or when declared due and payable, all or any part of the Additional DIP Indebtedness;
  - the entry of an order amending, supplementing, staying, vacating, or otherwise modifying the Order without the written consent of the Trustee-Lenders and the Debtors;
  - the appointment of an interim or permanent trustee in these Cases or the appointment of an examiner in these Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtors;

{7236 MOT A0249754.DOC 3}   4

- o the entry of an order or ruling disposing or depriving any of the Debtors of their right to operate their businesses and hold their property;

- o the dismissal of any of the Cases or the conversion of any of the Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code or the filing by the Debtors of a motion or other pleading seeking the dismissal of any of the Cases under Section 1112 of the Bankruptcy Code or otherwise;

- o the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien against the Trustee-Lenders' DIP Collateral;

- o the failure of the Debtors to perform any of its obligations under the Order which materially adversely affects the interests of the Trustee-Lenders in the DIP Collateral;

- o except as otherwise provided by the Order, the entry of an order in these Cases granting any other superpriority administrative expense or lien equal or superior to that granted to Trustee-Lenders;

- o the termination of the exclusive period for the Debtors to file a plan of reorganization in any of these Cases; or

- o a declaration or determination by any court of competent jurisdiction that any portion of the liens granted to the Trustee-Lenders pursuant to the Order, are null, void, or subordinate.

## II. JURISDICTION AND BACKGROUND

**A.     The Chapter 11 Filing**

4.     On September 14, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition in this Court under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-

1532, as amended (the "Bankruptcy Code"), thereby commencing the above-captioned cases (the "Cases"). The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. The United States Trustee has appointed a creditors' committee in the Cases. No trustee or examiner has been appointed.

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**B.   Background**

7. Perpetua was organized under the laws of the state of Florida in 1998. Perpetua (a) owns all of the capital stock of (i) Cedar Park and (ii) Perpetua Holdings, Inc. d/b/a Wade Funeral Home ("Wade") (a non-debtor affiliate) and (b) holds all of the common interests in Burr Oak. Perpetua provides administrative, managerial and other support services to Cedar Park, Burr Oak and Wade. Perpetua's subsidiaries' cemeteries and funeral homes principally serve minority communities in the Chicago and St. Louis metropolitan areas.

8. Cedar Park was organized under the laws of Illinois in 2004, at which time it acquired the Cedar Park Cemetery. Cedar Park owns and operates an active cemetery located at 12540 S. Halsted, Calumet Park, Illinois (the "Cedar Park Cemetery"). Cedar Park maintains an office on site.

9. Burr Oak was organized under the laws of Illinois in 2001, at which time it acquired the Burr Oak Cemetery. Burr Oak owns and operates an active cemetery located at 4400 W. 127th Street, Alsip, Illinois (the "Burr Oak Cemetery"). Burr Oak maintains an office on site.

10. PSF and MESBIC Ventures, Inc. ("MESBIC," along with PSF, the "Secured Creditors") are lenders to and hold certain equity-type investments in the Debtors.

11. On or about September 14, 2009, the Debtors filed their Emergency Motion Pursuant to Sections 105, 362, 363, and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure for Authority to: (1) Obtain Secured Post-Petition Financing, (2) Grant Priming Liens, Superpriority Administrative Expense Status, and Adequate Protection, (3) Modify the Automatic Stay, (4) Enter Into Post-Petition Agreements with its Lender, and (5) Schedule Final Hearing (the "Financing Motion").

12. Through the Financing Motion, the Debtors sought and obtained secured post-petition financing (the "DIP Facility") from PSF, subject to the terms and conditions set forth in the Final Order (I) Authorizing Debtors To Obtain Secured Post-Petition Financing, (2) Granting Priming Liens, Superpriority Administrative Expense Status, And Adequate Protection, (3) Modifying The Automatic Stay, And (4) Authorizing Debtor To Enter Into Post-Petition Agreements With Its Lender (the "Final Order"). Subsequently, on or about December 10, 2009, the Debtors sought, and the Court entered an order, amending the Final Order to increase the authorized Post-Petition Financing from PSF to $575,000 and the extending certain time deadlines contained in the Final Order.

13. Despite the funds the Debtors obtained from PSF under the Post-Petition Financing, the Cedar Park and Burr Oak are in need of additional monies to continue the operation and their attempted sale of their Cemeteries, and to preserve and realize the value of their Bankruptcy Estates for the benefit of all of their creditors. Accordingly, with the approval and consent of the Comptroller of the State of Illinois (the "Comptroller"), who, under the Illinois Cemetery Care Act, 760 ILCS 100/1 *et seq.* (the "Act") has authority over the Perpetual

Care Trusts of which the Lender-Trustees are Trustees, and PSF and Mesbic, the Debtors seeks an entry of the Order authorizing the Additional DIP Financing subject to the terms and conditions set forth in the Order.

14. The source of funds would be from the corpus of each Debtors' Perpetual Care Trusts, which are held in trust pursuant to the Act, 760 ILCS 100/4, and are not property of the Debtors' Estates. *See* 11 U.S.C. § 541(d).

### III. DIP FINANCING

15. The Debtors need the Additional DIP Financing to maintain continued operations at the Burr Oak and Cedar Park Cemeteries and for the preservation of their Bankruptcy Estates - all of which are aimed at preserving, maintaining, and/or increasing the value of the Debtors' assets.

16. The Debtors are unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code merely as an administrative expense pursuant to Section 364(b) of the Bankruptcy Code. The Debtors are unable to obtain credit on terms equal to or more favorable than those proposed by the Trustee-Lenders.

17. The Trustee-Lenders have agreed to make loans to the Debtors in accordance with the terms of the Order and have negotiated at arms' length and in good faith within the meaning of Section 364(e) of the Bankruptcy Code. Those terms include the following, which supplement the Rule 4001 Statement set forth at paragraphs 1 through 3 herein:

- Security and Adequate Protection. By the entry of the Order, the Trustee-Lenders will be granted, as security for the repayment of all amounts of the Additional DIP Indebtedness and subject only to the Carveout, (a) superpriority claim status pursuant to section 364(c)(1) of the Bankruptcy Code senior to any other superpriority claims (including that of PSF) and (b) will be secured by, pursuant to Sections 364(c)(2), 364(c)(3) and 364(d)

{7236 MOT A0249754.DOC 3}                                    8

of the Bankruptcy Code, a valid and perfected first priority, priming lien in and on all real and personal property of the Debtors, including without limitation all existing and after-acquired accounts, chattel paper, deposit accounts, instruments, investment property, documents, inventory, equipment, general intangibles (including intellectual property), insurance claims or proceeds from the sale of insurance policies, tort claims, and real estate interests, together with insurance proceeds of any of the foregoing (collectively with all proceeds and products of any or all of the foregoing, the "DIP Collateral") and (1) will retain their rights under 760 ILCS 100/15b. The Trustee-Lenders at their respective option may release at any time from their liens and security interests any assets determined by the either to have a risk of environmental liabilities which either of them in their sole discretion deem unacceptable. With respect to the Additional DIP Financing, no liens or security interests granted to the Trustee-Lenders, and no claim of the Trustee-Lenders, shall be subject to subordination to any other liens, security interests, or claims under Section 510 of the Bankruptcy Code or otherwise.

- Superprority Claim. Subject to the Carveout, the Trustee-Lenders' claim for repayment of the Additional DIP Financing shall constitute an allowed administrative-expense claim under Section 364(c)(1) of the Bankruptcy Code (the "Superpriority Claim") and shall have priority over all other administrative expenses and costs of administration of any kind (including those previously granted to PSF), including those specified in, or ordered pursuant to, Section 105, 326, 330, 331, 503(b), 507(a), 507(b), or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Cases or any Successor Case), and shall at all times be senior to the rights of the Debtors, any trustee,

and/or any estate representative in any of the Cases, if such Case or Cases are converted to one under chapter 7 of the Bankruptcy Code (a "Successor Case").

- Budget, Use of Funds.  The Additional DIP Financing shall be subject to the terms of the Order, and the proceeds thereof shall be used for "Care" as defined under 760 ILCS 100/2, in accordance with such expenditures as set forth in the Budget; provided, however, that the total amount of the Additional DIP Financing may not be increased except by further order of this Court. ;and further provided that the Debtors shall be (a) deemed to be in compliance with the Budget so long as its total cash disbursements, on a monthly basis, are less than 110% of the total amount provided for in the Budget for each month (collectively, the "Variance") and (b) permitted to pay expenses in the ordinary course of business in accordance with the Budget and the Variance unless and until this Court enters a subsequent order to the contrary.

- Stay Modification.  Subject to the restrictions set forth in the paragraph immediately below, the automatic stay pursuant to Section 362 of the Bankruptcy Code (the "Stay") is modified as to the Trustee- Lenders to permit them to perform in accordance with, and exercise, and enforce its rights, benefits, privileges, and remedies pursuant to the Order without further application or motion to, or order from, the Court (except as provided below) and regardless of any change in circumstances (whether or not foreseeable), neither Section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the Trustee-Lenders' exercise and enforcement of any of such rights, benefits, privileges and remedies.

- Foreclosure/Enforcement of Lien.  Upon the occurrence of any Event of Default or upon the Maturity Date, the Trustee-Lenders shall be entitled to file a motion on three (3)

business days' notice seeking modification of the Stay to allow for the Trustee-Lenders' exercise of all of its available remedies on notice to the Debtors, the Official Committee, PSF, other parties entitled to notice pursuant to Federal Rule of Bankruptcy Procedure 2002 and the United States Trustee (the "Stay Relief Motion") and the Court will conduct an expedited hearing as promptly as possible regarding the Stay Relief Motion. The Debtors shall cooperate with the Trustee-Lenders in connection with any permitted enforcement action by the Trustee-Lenders by, among other things, (a) providing access to the DIP Collateral to representatives of the Trustee-Lenders, (b) providing the Trustee-Lenders access to their books and records, (c) performing all other obligations set forth in the Order, and (d) taking reasonable steps to safeguard and protect the DIP Collateral until the Trustee-Lenders can make adequate provision to protect and safeguard the DIP Collateral. The Debtors shall not otherwise interfere or encourage others to interfere with the Trustee-Lenders' enforcement of its rights.

- Credit. The Debtors may not incur any other indebtedness under sections 364(c) or (d) of the Bankruptcy Code unless consented to by the Trustee-Lenders and PSF.

- Indemnities. The Debtors must indemnify and hold the Trustee-Lenders harmless from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities, and expenses (including, without limitation, reasonable attorneys' fees and disbursements, including those incurred upon any appeal) which may be instituted or asserted against or incurred by the Trustee-Lenders as the result of their having entered into the Additional DIP Financing or having extended credit thereunder, excluding any such suits, actions, proceedings, claims, damages, losses, liabilities, or expenses arising from the gross negligence or willful misconduct of the Trustee-Lenders.

- <u>Objections by Parties in Interest; Reservation of Rights</u>.  All of the provisions of the Order shall be binding on the Debtors and on all creditors and other parties in interest.

- <u>No Surcharge</u>.  At no time during these Cases shall the surcharge provisions of Section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions under Section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including unjust enrichment) be imposed upon the Trustee-Lenders and any of the DIP Collateral by or for the benefit of any party in interest, including, without limitation, the Debtors, any of the Estate Professionals (defined below), or any trustee.

- <u>Carveout</u>. Subject to the remaining provisions of this paragraph, the Trustee-Lenders' Superpriority Claim shall be subject to only the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930 (the "<u>Carveout</u>").

- <u>Order Binding on Successors and Assigns</u>.  The provisions of the Order shall be binding upon and inure to the benefit of the Trustee-Lenders, the Debtors, and their respective successors and assigns, including any trustee or other estate representative appointed as a representative of the Debtors' estates or of any successor estates.

- <u>Effect of Dismissal, Conversion, or Substantive Consolidation</u>.  If any or all of the Cases are dismissed, converted, otherwise superseded, or substantively consolidated, the Trustee-Lenders' rights and remedies under the Order shall be and remain in full force and effect as if the Cases had not been dismissed, converted, superseded, or substantively consolidated.  Furthermore, notwithstanding any such dismissal, conversion, supercission, or substantive consolidation, all of the terms and conditions of the Order, including, without limitation, the liens and the priorities granted under the Order, shall remain in full force and effect.

18. Good cause exists for approval of the Financing Motion and the Debtors' financing agreement with the Trustee-Lenders under the terms set forth in the Order. The entry of the Order will minimize disruption of the Debtors as "going concerns" and is in the best interest of the Debtors, their creditors, and their estates.

19. In accordance with Local Rule 4001-2, extraordinary circumstances exist to grant the highlighted provisions of the Order as the Trustee-Lenders have represented they would not extend the subject Additional DIP Financing without such provisions.

20. The Debtors believe that the terms of the Additional DIP Financing, taken as a whole, are more favorable to the Debtors than those available from alternative sources. Moreover, the Debtors are not aware of any alternative sources given the Debtors' current financial condition, capital structure and limited revenue generating capabilities.

21. The terms of the Additional DIP Financing, as more particularly set forth in the proposed Order, have been negotiated in good faith and at arm's length between the Debtors, the Trustee-Lenders, and are fair and reasonable under the circumstances.

22. Accordingly, the Debtors request that the Court enter the Order attached hereto and incorporated herein by reference for all purposes. The Debtors respectfully submit that the Court's entry of the Order is in the best interests of the Debtors, their creditors and its estate, and is necessary for the efficient and effective preservation and ultimate liquidation of the Debtors businesses.

### IV. LOCAL BANKRUPTCY RULE 4001-2 DISCLOSURES

23. The following disclosures of certain terms contained in the Interim Order are made pursuant to (A)(2) of Local Bankruptcy Rule 4001-2 ("Rule 4001-2"):

**Cross Collateralization Other Than As Adequate Protection:** No.

**Findings Regarding Validity, Perfection Or Amount Of Secured Creditor's Lien Or Debt And Waiver Of Claims Against Secured Creditor:** No.

**Waiver Of Rights Under Section 506(c)***:* Yes, see paragraph 16 of the Order.

**Liens On Chapter 5 Causes Of Action:** No.

**Roll-Up Of Prepetition Debt:** No.

**Unequal Treatment Of Professionals And Limit On Committee's Use Of Carve-Out:** No.

**Priming Of Secured Liens Without Consent:** No.

**Declaration Against Imposition Of Lender Liability:** No.

**Relief From The Automatic Stay On An Expedited Basis And/Or Without Further Order Of The Court:** Yes, see paragraphs 12 and 13 of the Order.

**The Maximum Borrowing On A Final Basis:** $500,000.

**The Budget:** See paragraphs 3 and 17 above.

24. The Debtors believe that the protections to be provided to the Trustee-Lenders in exchange for the financing contemplated hereby, as set forth in the proposed Order, are fair and reasonable under the current circumstances.

### V. NOTICE AND NON-OMNIBUS DATE REQUEST

25. No less than fifteen day notice of this motion has been provided to (a) the Office of the United States Trustee, (b) counsel for the Trustee-Lenders, (c) counsel for PSF and Mesbic, (d) counsel for the Committee, (d) the Illinois Department of Revenue, (e) the Illinois' Attorney General and (f) any other parties requesting notice in the Cases.

26. The Debtors have been diligently negotiating the terms of the Additional DIP Financing over the past months, which financing they need prior to February 1, 2010. The Debtors were not able to finalize certain issues that were required to be resolved prior to the filing of the Motion until January 13, 2010. In order to have the Motion presented and a final

order entered prior to that date, and at the same time, avoid the cost and other resources that would be necessary for and dual interim and final hearing process, the Debtors have set this Motion for a non-omnibus date. For these reasons, the Debtors ask that relief be granted to allow such presentation in one final hearing on a non-omnibus date prior to February 1, 2010.

## VI. CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Order: (a) authorizing the Debtors to obtain the Additional DIP Financing pursuant to the terms and conditions described in this motion and as more particularly described in the Order, with the Order being effective immediately upon its entry; and (b) granting the Debtors such other and further relief as is just and proper.

          Respectfully submitted,

          Perpetua, Inc.
          Perpetua Holdings of Illinois, Inc.
          Perpetua-Burr Oak Holdings of Illinois, L.L.C.

Dated: January 13, 2010     By:   */s/ Brian L. Shaw*
                                        One of their attorneys

Robert M. Fishman (#3124316)
Brian L. Shaw (#6216834)
Kimberly Bacher (#6285677)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151 telephone
(312) 980-3888 facsimile