UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 11 |
| PERPETUA-BURR OAK HOLDINGS OF | ) |
| ILLINOIS, L.L.C., *et al.* | ) Case No. 09-34022 |
| | ) Jointly Administered |
| Debtors. | ) |

**FINAL ORDER (1) AUTHORIZING DEBTOR TO (A) OBTAIN ADDITIONAL
POSTPETITION FINANCING AND (B) GRANTING SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIMS, PRIMING LIENS AND SECURITY
INTERESTS AND ADEQUATE PROTECTION AND (2) GRANTING RELATED
RELIEF**

Upon consideration of the *Motion Pursuant to Sections 105, 362, 363, and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure for the Entry of an Order (1) Authorizing the Debtor to (A) Obtain Additional Secured Post-Petition Financing and (B) Grant Priming Liens, Superpriority Administrative Expense Status, and Adequate Protection and (2) Granting Related Relief* (the "Financing Motion"), filed by the Perpetua Entities[1], the Debtors and Debtors in Possession in these Cases (collectively the "Debtors"), to obtain additional DIP Financing (the "Additional DIP Financing") from (a) US Trust, not individually, but solely as trustee (the "BOC Trustee") of the Burr Oak Cemetery Perpetual Care Trust, and (b) the Northern Trust Bank, not individually, but solely as trustee (the "CPC Trustee," collectively with the BOC Trustee, the "Trustee-Lenders") of the Cedar Park Cemetery Perpetual Care Trust, on a superpriority administrative and first-priority priming lien basis, subject to the Carveout exception set forth below, in accordance with the terms of the Order submitted herewith up to the aggregate principal amount of $500,000 (as allocated below)

---

[1] The Perpetua Entities are: Perpetua Holdings of Illinois, Inc., Perpetua-Burr Oak Holdings of Illinois, LLC and Perpetua, Inc.

{7185 ORD A0250331.DOC 2}

pursuant to sections 364(c) of the Bankruptcy Code.

Based on the unrebutted assertions made in the Financing Motion, the argument of counsel made on the record at the hearing ("Hearing") on the Financing Motion, the documentary and testimonial evidence presented and proffered at the Hearing, and the record, the Debtors, Comptroller and the Trustee-Lenders represent and stipulate as follows:

A. This Court has core jurisdiction over the Financing Motion pursuant to 28 U.S.C. §§ 157(b)(2) and 1334. Venue of this proceeding and the Financing Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

B. On September 14, 2009 ("Petition Date"), the Debtors filed for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-entitled chapter 11 cases (the "Cases"). The Debtors are in possession of and are managing their assets as debtors in possession within the meaning of Section 1101(1) of the Bankruptcy Code. As debtors in possession in Chapter 11, the Debtors have substantially all of the rights, powers, and duties of a trustee under Section 1107(a) of the Bankruptcy Code.

C. Debtor Perpetua-Burr Oak Holdings of Illinois, LLC d/b/a Burr Oak Cemetery ("Burr Oak") owns and operates the Burr Oak Cemetery in Alsip, Illinois. Debtor Perpetua Holdings of Illinois, Inc. d/b/a/ Cedar Park Cemetery ("Cedar Park") owns and operates the Cedar Park Cemetery located in Calumet Park, Illinois. Debtor Perpetua, Inc. ("Perpetua") owns all of the common stock of Cedar Park and all of the common interests of Burr Oak. Perpetua also provides certain management and administrative services to Cedar Park and Burr Oak.

D. Pacesetter SBIC Fund, Inc. ("PSF") and MESBIC Ventures, Inc. ("MESBIC," along with PSF, the "Secured Creditors") are lenders to and hold certain equity-type investments in the Debtors.

E.  On or about September 14, 2009, the Debtors filed their Emergency Motion Pursuant to Sections 105, 362, 363, and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure for Authority to: (1) Obtain Secured Post-Petition Financing, (2) Grant Priming Liens, Superpriority Administrative Expense Status, and Adequate Protection, (3) Modify the Automatic Stay, (4) Enter Into Post-Petition Agreements with its Lender, and (5) Schedule Final Hearing (the "PSF Motion").

F.  Through the PSF Motion, the Debtors sought and obtained secured post-petition financing (the "DIP Facility") from PSF, subject to the terms and conditions set forth in the Final Order (1) Authorizing Debtors To Obtain Secured Post-Petition Financing, (2) Granting Priming Liens, Superpriority Administrative Expense Status, And Adequate Protection, (3) Modifying The Automatic Stay, And (4) Authorizing Debtor To Enter Into Post-Petition Agreements With Its Lender (the "Final Order"). Subsequently, on or about December 10, 2009, the Debtors sought, and the Court entered an order, amending the Final Order to increase the authorized Post-Petition Financing from PSF to $575,000 and the extending certain time deadlines contained in the Final Order.

G.  Despite the funds the Debtors obtained from PSF under the Post-Petition Financing, the Cedar Park and Burr Oak are in need of additional monies to continue the operation and their attempted sale of their Cemeteries, and to preserve and realize the value of their Bankruptcy Estates for the benefit of all of their creditors. Accordingly, with the approval and consent of the Comptroller of the State of Illinois (the "Comptroller"), who, under the Illinois Cemetery Care Act, 760 ILCS 100/1 *et seq.* (the "Act") has authority over the Perpetual Care Trusts of which the Lender-Trustees are Trustees, and PSF and Mesbic, the Debtors seeks an entry of the Order authorizing the Additional Post-Petition Financing subject to the terms and

conditions set forth in the Order.

H. The source of funds is the corpus of each Debtors' Perpetual Care Trusts, which are held in trust pursuant to the Act, 760 ILCS 100/4, and are not property of the Debtors' Estates. *See* 11 U.S.C. § 541(d).

I. The Debtors need the Additional DIP Financing to maintain continued operations at the Burr Oak and Cedar Park Cemeteries and for the preservation of their Bankruptcy Estates - all of which are aimed at preserving, maintaining, and/or increasing the value of the Debtors' assets.

J. The Debtors are unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code merely as an administrative expense pursuant to Section 364(b) of the Bankruptcy Code. The Debtors are unable to obtain credit on terms equal to or more favorable than those proposed by the Trustee-Lenders.

K. The Trustee-Lenders have agreed to make loans to the Debtors in accordance with the terms of the Order and have negotiated at arms' length and in good faith within the meaning of Section 364(e) of the Bankruptcy Code.

L. Good cause exists for approval of the Financing Motion and the Debtors' financing agreement with the Trustee-Lenders under the terms set forth in the Order. The entry of this Order will minimize disruption of the Debtors as "going concerns" and is in the best interest of the Debtors, their creditors, and their estates.

M. In accordance with Local Rule 4001-2, extraordinary circumstances exist to grant the **two** provisions of the Order as highlighted pursuant to Federal Rule of Bankruptcy Procedure 4001 and Local Rule 4001 at paragraphs 1 through 3 and 23 of the Financing Motion, as the Trustee-Lenders have represented they would not extend the Additional DIP Financing without

such provisions.

N.    All other parties allegedly having liens or other interest in the Debtors' assets have been given notice of the Hearing, the relief sought in the Financing Motion and the associated Objection Deadline for the Hearing, as evidenced by certificates of service. The Court finds that notice was due, sufficient, appropriate, and adequate under Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure, Section 364 of the Bankruptcy Code, and the circumstances of these Cases.

BASED UPON the above findings, and for the reasons stated in open court that shall constitute the decision of the Court, it is

ORDERED:

1.    <u>Financing Motion Granted</u>. The Financing Motion is granted, subject to the terms and conditions set forth in this Order.

2.    <u>Authorization</u>. The Debtors are expressly authorized and empowered (a) to borrow money from the Lender in accordance with Budget (as defined in paragraph $\underline{5}$ below) and pursuant to the terms of this Order, on a senior secured and superpriority administrative expense basis as set forth in this Order; (b) to perform their obligations pursuant to the provisions of this Order, and (c) to enter into such agreements, instruments, and documents as and if necessary (collectively, the "<u>Additional DIP Loan Documents</u>") as are consistent with this Order and as may be necessary or required to evidence their obligations to the Trustee-Lenders, to consummate the terms and provisions of the Financing Motion and this Order, and to evidence perfection of the mortgages, liens and security interests to be given to the Trustee-Lenders pursuant to this Order and any Additional DIP Loan Documents. (All postpetition loans and all other indebtedness and obligations incurred on or after the Petition Date by the Debtors to the

Trustee-Lenders pursuant to this Order and any subsequent orders including principal, accrued and unpaid interest, costs, fees, and expenses, are referred to in this Order as the "Additional DIP Indebtedness." Notwithstanding the authorization granted under this Order for the Trustee-Lenders to lend and the Debtors to borrow such sums as are set forth in the Budget, this Order shall not constitute independent authority for the Debtors to spend such sums on items that may require separate authorization from the Bankruptcy Court.

3. Borrowing. Subject to the terms of the Order, Trustee-Lenders may lend funds to Debtors in an aggregate amount not to exceed $500,000 (limited to $250,000 per Trustee-Lender) unless extended by agreement of the Debtors and Trustee-Lenders and by order of the Court.

4. Interest. All Additional DIP Indebtedness shall bear interest at the rate of ten percent (10 %) per annum, except upon the occurrence and continuation of an Event of Default, in which event interest shall accrue at a rate of eighteen percent (18 %) per annum.

5. Use of Loan Proceeds. The DIP Financing shall be subject to the terms of this Order, and the proceeds thereof shall be used for "Care" as defined under 760 ILCS 100/2, in accordance with such expenditures as set forth in the Budget as defined in the Motion and attached to the Order (1) Authorizing Debtors To Obtain Secured Post-Petition Financing, (2) Granting Priming Liens, Superpriority Administrative Expense Status, And Adequate Protection, (3) Modifying The Automatic Stay, And (4) Authorizing Debtor To Enter Into Post-Petition Agreements With Its Lender, as such Budget has been and is subsequently amended by further order of the Court or with the Lender's advance written consent; provided, however, that the total amount of the Additional DIP Financing may not be increased except by further order of this Court; and further provided that the Debtors shall be (a) deemed to be in compliance with

the Budget so long as its total cash disbursements, on a monthly basis, are less than 110% of the total amount provided for in the Budget for each respective month period (collectively, the "Variance") and (b) permitted to pay expenses in the ordinary course of business in accordance with the Budget and the Variance unless and until this Court enters a subsequent order to the contrary. The extension of DIP Financing shall not be construed as a commitment to continue to provide DIP Financing after the occurrence of an Event of Default or beyond the Maturity Date.

6. **Termination of Postpetition Credit.** Except as the Trustee-Lenders in their sole discretion agree otherwise in writing, (a) the Trustee-Lenders' willingness to make loans pursuant to the authorization granted by the Order shall cease, (b) all Additional DIP Indebtedness shall be immediately due and payable in cash, and (c) the Trustee Lender shall have the enforcement rights set forth in Paragraphs 12 and 13 of the Order, upon the earlier (the "Maturity Date") of (a) May 31, 2010 (if the Additional DIP Financing has not been further extended by order of the Bankruptcy Court); (b) the date of acceleration of the Additional DIP Indebtedness upon the occurrence of an Event of Default; or (c) such later date as agreed to in writing by the applicable Trustee-Lenders and the Debtors (or any successor in interest).

7. **Nonpayment Event of Default.** An "Event of Default" (remedies as to which may only be exercised pursuant to Paragraph 12 and 13 of this Order) shall occur upon the Debtors' failure to pay when due and payable, or when declared due and payable, all or any portion of the Additional DIP Indebtedness.

8. **Additional Events of Default.** Each of the following constitute an "Event of Default" under this Order:

- the entry of an order or ruling granting any lien superior to Trustee-Lenders' interests in Trustee-Lenders' DIP Collateral (as defined below).

- the entry of an order amending, supplementing, staying, vacating, or otherwise modifying this Order without the written consent of the Trustee-Lenders and the Debtors;

- the appointment of an interim or permanent trustee in these Cases or the appointment of an examiner in these Cases with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Debtors;

- the entry of an order or ruling disposing or depriving any of the Debtors of their right to operate their businesses and hold their property;

- the dismissal of any of the Cases or the conversion of any of the Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code or the filing by the Debtors of a motion or other pleading seeking the dismissal of any of the Cases under Section 1112 of the Bankruptcy Code or otherwise;

- the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien against the Trustee-Lenders' DIP Collateral;

- the failure of the Debtors to perform any of its obligations under this Order which materially adversely affects the interests of the Trustee-Lenders in their DIP Collateral;

- except as otherwise provided by this Order, the entry of an order in these Cases granting any other superpriority administrative expense or lien equal or superior to that granted to Trustee-Lenders;

- the termination of the exclusive period for the Debtors to file a plan of reorganization in any of these Cases; or

{7185 ORD A0250331.DOC 2}                          8

    o    a declaration or determination by any court of competent jurisdiction that any portion of the liens granted to the Trustee-Lenders pursuant to this Order, are null, void, or subordinate.

Lender must provide written notice of any Event of Default under this Order to the Debtors, the Official Committee of Unsecured Creditors ("Committee"), other parties entitled to notice pursuant to Federal Rule of Bankruptcy Procedure 2002 and the United States Trustee.

    9.    <u>Security for DIP Indebtedness; First-Priority Priming Liens</u>. By the entry of this Order, the Trustee-Lenders will be granted, as security for the repayment of all amounts of the Additional DIP Indebtedness and subject only to the Carveout, (a) superpriority claim status pursuant to section 364(c)(1) of the Bankruptcy Code senior to any other superpriority claims (including that of PSF) and (b) will be secured by, pursuant to Sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, a valid and perfected first priority, priming lien in and on all real and personal property of the Debtors, including without limitation all existing and after-acquired accounts, chattel paper, deposit accounts, instruments, investment property, documents, inventory, equipment, general intangibles (including intellectual property), insurance claims or proceeds from the sale of insurance policies, tort claims, and real estate interests, together with insurance proceeds of any of the foregoing (collectively with all proceeds and products of any or all of the foregoing, the "<u>DIP Collateral</u>") and (1) will retain their rights under 760 ILCS 100/15b. The Trustee-Lenders at their respective option may release at any time from their liens and security interests any assets determined by the either to have a risk of environmental liabilities which either of them in their sole discretion deem unacceptable. With respect to the Additional DIP Financing, no liens or security interests granted to the Trustee-Lenders, and no

claim of the Trustee-Lenders, shall be subject to subordination to any other liens, security interests, or claims under Section 510 of the Bankruptcy Code or otherwise.

10.     <u>Perfection of Liens</u>.  All liens and security interests on or in the DIP Collateral granted to the Trustee-Lenders by this Order and any Additional DIP Loan Documents are deemed to be duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers, or other third-party consents or other act shall be required to effect such perfection.  Notwithstanding the provisions of Section 362 of the Bankruptcy Code, the Trustee-Lenders may, in their sole discretion and at its sole option, file or record or cause the Debtors to obtain any third-party consents or execute, file, or record, at the Debtors' expense, any such notices of liens and security interests, mortgages and other similar documents as the Trustee-Lenders may require.  If the Trustee-Lenders, in its sole discretion, elects to obtain any third-party consents or causes there to be filed or recorded any such notices, financing statements, mortgages, or other documents with respect to such security interests and liens, all such third-party consents, financing statements, or similar documents or taking possession shall be deemed to have been filed or recorded or taken in these Cases as of the Petition Date but with the priorities set forth in this Order.  The Trustee-Lenders in their sole discretion may, but shall not be required to, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which the Debtors have real or personal property and such filing or recording shall be accepted and shall constitute further evidence of perfection of the Trustee-Lenders' interests in the DIP Collateral.

11.     <u>Superprority Claim</u>.  Subject to the Carveout, the Trustee-Lenders' claim for repayment of the Additional DIP Financing shall constitute an allowed administrative-expense

claim under Section 364(c)(1) of the Bankruptcy Code (the "Superpriority Claim") and shall have priority over all other administrative expenses and costs of administration of any kind (including those previously granted to PSF), including those specified in, or ordered pursuant to, Section 105, 326, 330, 331, 503(b), 507(a), 507(b), or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in the Cases or any Successor Case), and shall at all times be senior to the rights of the Debtors, any trustee, and/or any estate representative in any of the Cases, if such Case or Cases are converted to one under chapter 7 of the Bankruptcy Code (a "Successor Case").

12. <u>Modification of Automatic Stay; Remedies</u>. Subject to the restrictions set forth in paragraph 13, below, the automatic stay pursuant to Section 362 of the Bankruptcy Code (the "Stay") is modified as to the Trustee-Lenders to permit them to perform in accordance with, and exercise, and enforce its rights, benefits, privileges, and remedies pursuant to this Order without further application or motion to, or order from, the Court (except as provided below) and regardless of any change in circumstances (whether or not foreseeable), neither Section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the Trustee-Lenders' exercise and enforcement of any of such rights, benefits, privileges and remedies.

13. <u>Other Remedies Upon Default</u>. Upon the occurrence of any Event of Default or upon the Maturity Date, the Trustee-Lenders shall be entitled to file a motion on three (3) business days' notice seeking modification of the Stay to allow for the Trustee-Lenders' exercise of all of its available remedies on notice to the Debtors, the Committee, PSF, other parties entitled to notice pursuant to Federal Rule of Bankruptcy Procedure 2002 and the United States Trustee (the "Stay Relief Motion") and the ~~Court will conduct~~ [parties will not object to the Court conducting] an expedited hearing as promptly ) psf

as possible regarding the Stay Relief Motion. The Debtors shall cooperate with the Trustee-Lenders in connection with any permitted enforcement action by the Trustee-Lenders by, among other things, (a) providing access to the DIP Collateral to representatives of the Trustee-Lenders, (b) providing the Trustee-Lenders access to their books and records, (c) performing all other obligations set forth in the Order, and (d) taking reasonable steps to safeguard and protect the DIP Collateral until the Trustee-Lenders can make adequate provision to protect and safeguard the DIP Collateral. The Debtors shall not otherwise interfere or encourage others to interfere with the Trustee-Lenders' enforcement of its rights.

14. **Credit.** The Debtors may not incur any other indebtedness under sections 364(c) or (d) of the Bankruptcy Code unless consented to by the Trustee-Lenders and PSF.

15. **Indemnities.** The Debtors must indemnify and hold the Trustee-Lenders harmless from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities, and expenses (including, without limitation, reasonable attorneys' fees and disbursements, including those incurred upon any appeal) which may be instituted or asserted against or incurred by the Trustee-Lenders as the result of their having entered into the Additional Post-Petition Financing or having extended credit thereunder, excluding any such suits, actions, proceedings, claims, damages, losses, liabilities, or expenses arising from the gross negligence or willful misconduct of the Trustee-Lenders.

16. **No Surcharge.** At no time during these Cases shall the surcharge provisions of Section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions under Section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including unjust enrichment) be imposed upon the Trustee-Lenders and any of the DIP Collateral by or for the

benefit of any party in interest, including, without limitation, the Debtors, any of the Estate Professionals (defined below), or any trustee.

17.    Carveout.  Subject to the remaining provisions of this paragraph, the Trustee-Lenders' Superpriority Claim shall be subject to only the payment of any unpaid fees payable pursuant to 28 U.S.C. § 1930 (the "Carveout").

18.    Order Binding on Successors and Assigns.  The provisions of this Order shall be binding upon and inure to the benefit of the Trustee-Lenders, the Debtors, and their respective successors and assigns, including any trustee or other estate representative appointed as a representative of the Debtors' estates or of any successor estates.

19.    Effect of Dismissal, Conversion, or Substantive Consolidation.  If any or all of the Cases are dismissed, converted, otherwise superseded, or substantively consolidated, the Trustee-Lenders' rights and remedies under this Order shall be and remain in full force and effect as if the Cases had not been dismissed, converted, superseded, or substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion, supercission, or substantive consolidation, all of the terms and conditions of this Order, including, without limitation, the liens and the priorities granted under this Order, shall remain in full force and effect.

20.    Covenants.  The Debtors shall timely comply with all of the covenants set forth in this Order and any DIP Loan Documents.

21.    Trustee-Lenders' Reservation of Rights; No Waiver.  The Trustee-Lenders shall not be deemed to have waived, and shall be deemed to have expressly reserved, any and all claims, defenses, rights, and remedies it has pursuant to, as the case may be, any or all of the Additional DIP Loan Documents, the Bankruptcy Code, and/or other applicable law. Without limiting the generality of the foregoing, the Trustee-Lenders may request from this Court any

such additional protection as it may reasonably require with respect to the Additional DIP Indebtedness.

22. <u>Effect of Modification of Order</u>. The Debtors shall not, without the Trustee-Lenders' prior written consent, seek to modify, vacate, or amend this Order or any Additional DIP Loan Document. If any provision of this Order is modified, vacated, or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect (a) the validity of any Additional DIP Indebtedness outstanding immediately prior to the effective time of such stay, modification, or vacation, or (b) the validity and enforceability of any lien, priority, right, privilege, or benefit authorized by this Order with respect to any such Additional DIP Indebtedness. Notwithstanding any such stay, modification, or vacatur, any Additional DIP Indebtedness outstanding immediately prior to the effective time of such modification, stay, or vacatur shall be governed in all respects by the original provisions of this Order, and the Trustee-Lenders shall be entitled to all the rights, privileges, and benefits, including, without limitation, the security interests and priorities granted herein, with respect to all such Additional DIP Indebtedness.

23. <u>Safe Harbor</u>. The Court has considered and determined the matters addressed in this Order pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtors to obtain credit on the terms and conditions upon which the Debtors and the Trustee-Lenders have agreed, and has found that the Trustee-Lenders acted in good faith in connection with providing the Additional DIP Financing to the Debtors. Accordingly, each of such terms and conditions constitutes a part of the authorization under Section 364 of the Bankruptcy Code, and is therefore subject to the protections contained in Section 364(e) of the Bankruptcy Code.

24. <u>Miscellaneous Provisions</u>.

(a) <u>Sale of Collateral; Right to Credit Bid</u>. Pursuant to section 363(k) of the Bankruptcy Code, the Trustee-Lenders shall have the right to use the Additional DIP Indebtedness to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral. Upon the closing of a sale of all or any portion of the DIP Collateral, the proceeds thereof shall be remitted to Trustee-Lenders until the Additional DIP Indebtedness is paid in full.

(b) <u>No Waiver</u>. The failure of the Trustee-Lenders at any time or time hereafter to require strict performance by the Debtors (or by any trustee) of any provision of this Order or any Additional DIP Loan Documents shall not waive, affect, or diminish any right of the Trustee-Lenders thereafter to demand strict compliance and performance therewith. No delay on the part of the Trustee-Lenders in the exercise of any right or remedy under this Order or any Additional DIP Loan Documents shall preclude any other or further exercise of any right or remedy, and the Trustee-Lenders shall not be deemed to have suspended or waived any of its rights or remedies under this Order, any Additional DIP Loan Documents, the Bankruptcy Code, or other applicable law unless such suspension or waiver is in writing

(c) <u>Right to Income of Interest</u>. Nothing contained herein shall prejudice or otherwise affect the Debtors' rights to receive the distributions of income they are entitled to receive on account of interest earned on the corpus of their respective Perpetual Care Trusts.

25. <u>Controlling Effect of Order</u>. To the extent that any provision of this Order conflicts with any provision of the Financing Motion or any Additional DIP Loan Document, the provision of this Order shall control.

26. <u>Order Effective</u>. This Order shall be effective as of the date of entry by the Court.

Dated: **JAN 2 8 2010**     Entered: _[signature]_

Order prepared by:

Robert M. Fishman (#3124316)
Brian L. Shaw (#6216834)
Kimberly Bacher (#6285677)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 541-0151 telephone
(312) 980-3888 facsimile