## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 Cases |
| PERPETUA-BURR OAK HOLDINGS OF ) | |
| ILLINOIS, L.L.C., *et al.,* ) | Case No. 09-34022 |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Hon. Pamela S. Hollis |
| ) | |
| ) | |

### ORDER APPROVING (A) SALE OF OPERATING ASSETS OF CEDAR PARK AND BURR OAK BUSINESSES, (B) TERMS OF SALE AGREEMENT, (C) SALE TERMS AND BIDDING PROCEDURES, BREAK UP FEE AND AUCTION NOTICE AND (D) RELATED RELIEF

**THIS MATTER** coming to be heard upon the motion of Perpetua Holdings of Illinois, Inc. d/b/a Cedar Park Cemetery ("**Cedar Park**") and Perpetua Burr-Oak Holdings of Illinois, L.L.C. d/b/a Burr Oak Cemetery ("**Burr Oak**", collectively, with Cedar Park, the "**Debtors**"), for the entry of an order approving (a) sale of operating assets of Cedar Park and Burr Oak Businesses, (b) terms of Agreement, (c) Terms and Bidding Procedures, Break Up Fee and Auction Notice and (d) related relief ("**Sale Motion**")[1]; due and adequate notice of the Motion having been given to all parties entitled thereto; the Court having jurisdiction over both the subject matter of and the parties to the Motion and otherwise being fully advised in the premises,

**IT IS HEREBY ORDERED** that:

1. The Debtors are authorized to proceed with the Sale of the Businesses pursuant to the terms set forth in the Sale Motion and the Agreement with Cemecare, LLC or its designee (collectively, "Buyer"), and subject to the Auction process and other Terms and Procedures provided for in the Sale Motion and this Order.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

{7236 ORD A0255731.DOC 2}

2. The Terms and Procedures set forth in the Sale Motion, including but not limited to the provision of the Break-Up Fee and other Bid Protections in favor of Buyer under the terms of the Agreement are hereby approved. Specifically: [shall be asked) psl

(a). Any competitive bidding for the Businesses shall be conducted at the Auction to be held at the offices of Shaw Gussis Fishman Glantz Wolfson & Towbin LLC at 1:30 p.m. on April 26, 2010, after which the Court shall enter an order in form and substance reasonable acceptable to Purchaser authorizing the sale of the Businesses free and clear of liens, claims and encumbrances (other than the Permitted Exceptions) (the "**Sale Order**"), which form of proposed Sale Order shall be submitted to and filed with the Court on or before April 13, 2010. At the Auction, the Debtors shall conduct the sale by open bidding, except that nothing contained in the Procedures Order or elsewhere shall prohibit the Debtors, at the Auction, from conducting separate or joint discussions with the Buyer, any Qualified Bidder (as defined below) or any creditor or their representatives in private and not on the record of such proceeding. A court reporter shall make a record of the open bidding as it occurs.

(b) Unless otherwise ordered by the Court for cause shown, for any person to participate in the Auction (a "**Potential Bidder**"), on or before 1:30 p.m. (CDT) p.m. on April 23, 2010 ("**Bidding Deadline**"), such person must deliver to the Debtors (in care of their counsel) (i) such information as the Debtors shall request establishing a Potential Bidder's (as defined in the Agreement) ability to close the Sale of the Businesses in a timely manner, including a demonstration of financial wherewithal to close such sale; (ii) a cashier's or certified check made payable to the Debtors for funds equal to the amount equal to 7.5% of its Qualified Bid; (iii) a list of Contracts that it wishes to assume over and above the Assumed Obligations set forth in the Agreement; and (iv) an executed sale agreement for one or both Businesses in substantially the same form as this Agreement (though absent any bid protection, auction and bid procedures or contingency periods), in form and substance acceptable to the Debtors. Any Potential Bidder meeting all of the above requirements that wishes to participate in the Auction must attend the Auction in person, or by telephone, and acknowledge in writing that it is familiar with, understands and accepts the procedures specified in the Terms and Procedures Order. Any person qualifying under all of the above standards shall be entitled to bid to purchase the Businesses and will be hereinafter referred to as a "**Qualified Bidder**." Any bid made by a Qualified Bidder shall be referred to as a "**Qualified Bid**."

(c) A copy of the Terms and Procedures shall be served with the Notice of Auction Sale respecting the Auction (the "**Auction Notice**") and served pursuant to the procedures described in this Motion. The Auction Notice shall specify the Auction Date and the time and place of the Auction.

(d) The Debtors may grant reasonable access to the Businesses to any person expressing an interest in viewing the same for the purpose of making a bid thereon, and the Debtors will further agree to make financial and such other information concerning the Businesses available to any prospective bidder. The Debtors shall require any prospective bidder to enter into a confidentiality agreement (if it has not already done so), in form and substance no less restrictive than the confidentiality agreements executed by Buyer.

(e)     The Debtors will offer the Businesses for sale at the Auction in conformity with these Terms and Procedures and the Procedures Order. At the conclusion of the Auction, the Debtors will undertake the Bid Analysis, and consult with counsel to the Committee, to determine which Qualified Bid(s) is or are, the Winning Bid(s). At the conclusion of the Bid Analysis, the Debtors shall ask the Court to enter an order (in form and substance substantially similar to the Sale Order and reasonably satisfactory to the Winning Bidder) authorizing the Debtors to consummate the transaction in accordance with the Winning Bid(s) with the Winning Bidder(s) and to execute such additional documentation as is reasonably necessary to close such Sale (as defined below).

(f)     The Procedures Order will include a requirement that an Auction shall be conducted (a) for the Cedar Park Business, if any Qualified Bid for the Cedar Park Business has a cash value that exceeds the Purchase Price by at least $35,000, (b) for the Burr Oak Business, if any Qualified Bid for the Burr Oak Business has a cash value that exceeds the Burr Oak Purchase Price by $5,000 or (c) for both Businesses, if the aggregate amount of the highest Qualified Bid for each of the Businesses has a cash value that exceeds the Purchase Price by $35,000. Subsequent bids for either the Cedar Park Business, alone, or both Businesses together, shall be in increments not less than $10,000.00. Subsequent bids for the Burr Oak Business, alone, shall be in increments of $5,000. If Qualified Bids for either or both Businesses do not reach the thresholds set forth above, subject to the Debtors right to withdraw the Burr Oak Business from the Auction, Buyer will be deemed to be the Winning Bidder for the Business (or Businesses) for which no Auction is held.

(g)     The offers of all Qualified Bidders shall be irrevocable until the earlier of the (i) two business days after the Closing of the sale on the applicable Business or (ii) the withdrawal of the applicable Business for sale by the Debtors. Earnest Money Deposits for Qualified Bidders that do not become Winning Bidders shall be returned upon the Qualified Bidder's offer becoming revocable pursuant to the terms of this paragraph.

(h)     In the event that a Winning Bidder defaults in the performance of its obligation to purchase the applicable Business pursuant to a Winning Bid, the Winning Bidder's Earnest Money Deposit shall be forfeited.

(i)     In the event that a Winning Bidder defaults in the performance of its obligations to purchase the applicable Business pursuant to a Winning Bid, then the next highest bidder for that Business shall be the Winning Bidder. Consequently, that person's bid (the "**Back-Up Bid**") will be treated as the Winning Bid, without further notice, hearing or entry of additional order by the Court.

(j)     Any sale of the Businesses hereunder (the "**Sale**") shall be free and clear of all liens, claims and encumbrances other than the Permitted Exceptions (unless otherwise agreed to by such Winning Bidder and the Debtors), with such liens and interests attaching to the proceeds of the Sale (the "**Sale Proceeds**") in the same status and priority as those liens and interests enjoyed prior to the Auction and Sale. The Sale Order shall expressly so provide.

(k)     The sale of the Businesses shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, the Estates, or

{7236 ORD A0255731.DOC 2}                           3

their respective agents. By submitting a bid, each Qualified Bidder shall be deemed to have acknowledged and represented that (i) it has had an opportunity to inspect and examine the Businesses and to conduct any and all due diligence regarding the Businesses prior to making its bid; (ii) it has relied solely upon its own independent review, investigation and/or inspection of any documents and the Businesses in making its bid; and (iii) it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Businesses by any person whatsoever, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or, as to the Winning Bidder, the applicable purchase agreement.

(l) Notwithstanding anything to the contrary in this Order or the Agreement, a Winning Bid shall have been accepted by the Debtors only upon entry of the Sale Order and the Debtors will not be obligated to take any action related to the sale of the Businesses unless and until the Court enters the Sale Order. The Debtors' presentation to the Court for approval of a Winning Bid does not constitute the Debtors' acceptance thereof.

(m) Upon the Court's entry of the Sale Order, a Winning Bidder(s) (which may be the Buyer) shall become a "**Purchaser**."

(n) In the event the Debtors enter into a transaction for the sale of the Cedar Park Business (alone or together with the Burr Oak Business) to someone other than Buyer, and provided that Buyer is not otherwise in default or has not terminated the Agreement for any other reason, Buyer shall be paid a "break-up" fee in an amount equal to $25,000, (the "**Break-Up Fee**" and together with the provisions of (g) above, the "**Bid Protections**"), which amounts will be paid by the Debtors from the Closing of a Sale approved by the Court to a Purchaser other than the Buyer.

3. To the extent that a Break-Up Fee is paid to the Buyer in connection with the Bidding Procedures, such Break-Up Fee must remain free and clear of any claim or lien of the secured creditors.

4. The Agreement, in the form attached to the Motion, is hereby approved for use in connection with the Sale of the Businesses.

5. A hearing to approve the Sale of the Businesses to the Purchaser (as defined in the Motion) and to present the Sale Order for entry shall be held on April 27, 2010 at _11:00_ )p*m*_a_.m..(CDT) before the Honorable Pamela S. Hollis, Courtroom Room 644 in the U. S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, or in her absence, before such other judge who may be sitting in her place and stead, and may be continued from time to time as

announced in open Court.

6. The Debtor shall file a proposed form of Sale Order with the Court, and serve the proposed Sale Order on those parties receiving notice via the Court's Electronic Case Filing System, on or before April 13, 2010. Any objections to the entry of the sale Order must be in writing, filed with the Court and served so that they are received on or before April 23, 2010.

7. The form of the Auction Notice is approved and the Debtors shall cause to be served upon: (a) all of the Debtor's creditors; (b) all entities known to have expressed a substantial interest in purchasing the Businesses; (c) all other entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Businesses or their real or personal property; (d) the Committee and its counsel; (e) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; and (f) the United States Debtors.

8. The Debtors request the authority the place the Auction Notice in the auction section of the Chicago Tribune and the notice section of the Chicago Defender and Daily Southtown at least seven days prior to the Auction Date.

Dated: APR 01 2010          Entered _____
                                    United States Bankruptcy Judge

Order prepared by:

Brian L. Shaw (#6216834)
Shaw Gussis Fishman Glantz
   Wolfson & Towbin LLC
321 N. Clark St., Suite 800
Chicago, IL 60654
Tel: (312) 980-3836
Fax: (312) 275-0584
e-mail: bshaw100@shawgussis.com

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| In re | Chapter 11 |
|---|---|
| Perpetua-Burr Oak Holdings of, Illinois, L.L.C., et al., | Case No. 09-34022 (Jointly Administered) |
| Debtors. | Hon. Pamela S. Hollis |

## NOTICE OF AUCTION SALE OF BUSINESSES

**PLEASE TAKE NOTICE** that on April 1, 2010, upon the motion ("Motion") of Perpetua-Burr Oak Holdings of Illinois, L.L.C. and Perpetua Holdings of Illinois, Inc. (collectively, the "Debtors"), the United States Bankruptcy Court for the Northern District of Illinois entered an order (a) authorizing the sale of the businesses commonly known as the Cedar Park Cemetery and Funeral Home (the "Cedar Park Business") and the Burr Oak Cemetery (the "Burr Oak Business," collectively with the Cedar Park Business, the "Businesses") to Cemecare, LLC or its respective designees ("Buyer") for **$675,000 plus certain assumed customer obligations,** pursuant to the terms and conditions of a certain sales agreement (the "Agreement"); authorizing the Debtors to offer the Business for sale at auction pursuant to the terms set forth below and (b) approving certain Notice and Bidding Procedures (the "Procedures Order").

**PLEASE TAKE FURTHER NOTICE** that the sale to Buyer is subject to higher or better offers, and that an **auction of the Businesses will be held at the offices of Shaw Gussis Fishman Glantz Wolfson & Towbin LLC, 321 N. Clark Street, Suite 800, Chicago, Illinois, at 1:30 p.m., CDT, on April 26, 2010** (the "Auction"), subject to the Auction and Bidding Procedures set forth below, and such additional terms and conditions as set forth in the Motion. Specifically:

(a)    Pursuant to the Terms and Procedures Order, the Debtors, in consultation with certain independent consultants and counsel for the Official Committee of Unsecured Creditors Committee ("Committee") shall determine which Qualified Bid or Bids are the highest or otherwise best offer(s) (the "Winning Bid"), and the bidder(s) making the Winning Bid(s) (the "Winning Bidder").

(b)    Any competitive bidding for the Businesses shall be conducted at the Auction pursuant to the Procedures Order, after which the Court shall be asked to enter an order in form and substance reasonably acceptable to Purchaser authorizing the sale of the Businesses (the "Sale Order"), which shall be submitted to and filed with the Court on or before April 13, 2010.

(f)    Unless otherwise ordered by the Court for cause shown, for any person to participate in the Auction (a "Potential Bidder"), on or before 1:30 p.m. (Central Daylight Savings Time) on April 23, 2010 ("Bidding Deadline"), such person must deliver to the Debtors

{7236 NTC A0255640.DOC}

(in care of their counsel) (i) such information as the Debtors shall request establishing a Potential Bidder's (as defined in the Agreement) ability to close the Sale of the Businesses in a timely manner, including a demonstration of financial wherewithal to close such sale; (ii) a cashier's or certified check made payable to the Debtors for funds equal to the amount equal to 7.5% of its Qualified Bid; (iii) a list of Contracts that it wishes to assume over and above the Assumed Obligations set forth in the Agreement; and (iv) an executed sale agreement for one or both Businesses in substantially the same form as this Agreement (though absent any bid protection, auction and bid procedures or contingency periods), in form and substance acceptable to the Debtors. Any Potential Bidder must attend the Auction in person or by telephone, and acknowledge in writing that it is familiar with, understands and accepts the procedures specified in the Procedures Order. Any person qualifying under all of the above standards shall be entitled to bid to purchase the Businesses and will be hereinafter referred to as a "Qualified Bidder." Any bid made by a Qualified Bidder shall be referred to as a "Qualified Bid."

(g) The Debtors may grant reasonable access to the Businesses and their financial information to any person expressing an interest in viewing the same for the purpose of making a bid thereon, but shall require such person to enter into a confidentiality agreement (if it has not already done so), in form and substance no less restrictive than the confidentiality agreements executed by Buyer.

(f) An Auction shall be conducted (a) for the Cedar Park Business, if any Qualified Bid for the Cedar Park Business has a cash value that exceeds the Purchase Price by at least $35,000 (i.e., **$685,000**), (b) for the Burr Oak Business, if any Qualified Bid for the Burr Oak Business has a cash value that exceeds the Burr Oak Purchase Price by $5,000 (i.e. **$30,000**)or (c) for both Businesses, if the aggregate amount of the highest Qualified Bid for each of the Businesses has a cash value that exceeds the Purchase Price by $35,000 (i.e., **$710,000**). Subsequent bids for either the Cedar Park Business, alone, or both Businesses together, shall be in increments not less than **$10,000**. Subsequent bids for the Burr Oak Business, alone, shall be in increments of **$5,000**. If Qualified Bids for either or both Businesses do not reach the thresholds set forth above, subject to the Debtors right to withdraw the Burr Oak Business from the Auction, Buyer will be deemed to be the Winning Bidder for the Business (or Businesses) for which no Auction is held. The Debtors have the right to withdraw the Burr Oak Business from the Auction at any time prior to the conclusion of the Auction.

(g) The offers of all Qualified Bidders shall be irrevocable until the earlier of (i) two business days after the Closing of the sale of the applicable Business, or (ii) the withdrawal of the applicable Business for sale by the Debtors. Upon a Qualified Bidder's offer becoming revocable, the Debtors shall return the Earnest Money Deposit to the applicable Qualified Bidder.

(h) In the event that a Winning Bidder defaults in the performance of its obligation to purchase the applicable Business pursuant to a Winning Bid, (a) the Winning Bidder's Earnest Money Deposit shall be forfeited and (b) the next highest bidder for such Business shall be the Winning Bidder. Consequently, that person's bid (the "Back-Up Bid") will be treated as the Winning Bid, without further notice, hearing or entry of additional order by the Court.

(i)     Any sale of the Businesses hereunder (the "Sale") shall be free and clear of all liens, claims and encumbrances other than the Permitted Exceptions (unless otherwise agreed to by such Winning Bidder and the Debtors), with such liens and interests attaching to the proceeds of the Sale (the "Sale Proceeds") in the same status and priority as those liens and interests enjoyed prior to the Auction and Sale. The Sale Order shall expressly so provide.

(j)     The sale of the Businesses shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, the Estates, or their respective agents.

(k)     In the event the Debtors enter into a transaction for the sale of the Cedar Park Business (alone or together with the Burr Oak Business) to someone other than Buyer, and provided that Buyer is not otherwise in default or has not terminated the Agreement for any other reason, Buyer shall be paid a "break-up" fee in an amount equal to $25,000, (the "Break-Up Fee" and together with the provisions of (g) above, the "Bid Protections"), which amounts will be paid by the Debtors from the Closing of a Sale approved by the Court to someone other than the Buyer.

(l)     A hearing to approve the Sale of the Business to the Purchaser shall be held on April 27, 2010 at _____ .m. before the Honorable Pamela S. Hollis, Room 644, 219 South Dearborn Street, Chicago, Illinois, or in her absence, before such other Judge sitting in her stead and may be continued from time to time as announced in open Court.

**PLEASE TAKE FURTHER NOTICE** that any objection to the entry of the Sale Order must be made in writing and filed with the Court on or before **April 23, 2010** with copies of such objection being served and received by those parties receiving notices in the cases from the Court's Electronic Case Filing (ECF) system.

**PLEASE TAKE FURTHER NOTICE** that any discrepancies between the terms of this Notice and the Procedures Order shall be resolved in favor of the Procedures Order. Parties having any questions about the Auction, or wishing to obtain a copy of the Motion, Procedures Order or Agreement may contact Brian L. Shaw or Kimberly A. Bacher at counsel for the Debtors, Shaw Gussis Fishman, Glantz Wolfson & Towbin LLC, 321 N. Clark Street, Suite 800, Chicago, IL 60654, (312) 541-0151, fax: (312) 980-3888.

{7236 NTC A0255640.DOC}    3